**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MOHAMMAD IBRAHIM BAZZI,

    Plaintiff,

  v.

ANDREA M. GACKI, in her official
capacity as Director of the U.S. Department
of the Treasury, Office of Foreign Assets
Control, and UNITED STATES
DEPARTMENT OF THE TREASURY,
OFFICE OF FOREIGN ASSETS
CONTROL,

    Defendants.

Civil Action No. 19-cv-00484 (RM)

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................2

I.      Statutory and Regulatory Background ..............................................................2

      A.    Historical Overview ............................................................................2

      B.    International Emergency Economic Powers Act ("IEEPA") ...................3

      C.    Executive Order 13224 .......................................................................4

II.     Factual Background ........................................................................................5

      A.    Bazzi's Designation Under EO 13224 ................................................5

      B.    Bazzi's Lawsuit and Additional Notice ..............................................8

STANDARD OF REVIEW .................................................................................................10

ARGUMENT ....................................................................................................................11

I.      Bazzi's Constitutional Claim Fails..................................................................11

      A.    Bazzi Has No Alleged Connection to the United States and Therefore Cannot Assert a Due Process Claim..............................................................11

      B.    OFAC Provided Bazzi Extensive Notice of His Connections to Hizballah. ..........12

II.     OFAC Provided Bazzi With Sufficient Notice Under the APA. .........................16

III.    Bazzi Does Not Even Dispute Having Hizballah Connections, and Ample Evidence Supports OFAC's Decision to Designate Him as a SDGT. .................17

CONCLUSION ..................................................................................................................18

## TABLE OF AUTHORITIES

**CASES**

*32 County Sovereignty Committee v. Department of State*,
  292 F.3d 797 (D.C. Cir. 2002) ...................................................................................12

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
  686 F.3d 965 (9th Cir. 2012)....................................................................................17

*Camp v. Pitts*,
  411 U.S. 138 (1973) ..................................................................................................16

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) ....................................................................................................2

*Fares v. Smith*,
  249 F. Supp. 3d 115 (D.D.C. 2017), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018) ..........15, 17

*Fares v. Smith*,
  901 F.3d 315 (D.C. Cir. 2018) ............................................................................14, 15

*FBME Bank Ltd. v. Lew*,
  209 F. Supp. 3d 299 (D.D.C. 2016) ..........................................................................17

*Gen. Elec. Co. v. Jackson*,
  610 F.3d 110 (D.C. Cir. 2010) ..................................................................................15

*Gilbert v. Homar*,
  520 U.S. 924 (1997) ..................................................................................................12

*Holy Land Found. for Relief and Dev. v. Ashcroft*,
  333 F.3d 156 (D.C. Cir. 2003) ............................................................................13, 16

*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) ..........................................................................11, 16

*Johnson v. Eisentrager*,
  339 U.S. 763 (1950)..................................................................................................11

*Joshi v. Nat'l Transp. Safety Bd.*,
  791 F.3d 8 (D.C. Cir. 2015) ......................................................................................15

*Joumaa v. Mnuchin*,
  Civ. A. No. 17-2780 (TJK),  2019 WL 1559453 (D.D.C. Apr. 10, 2019),
  *appeal filed*, No. 19-5166 (D.C. Cir. June 10, 2019)............................................7, 15

*Kadi v. Geithner*,
  42 F. Supp. 3d 1 (D.D.C. 2012) ..........................................................................11, 15

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .................................................................................................12

*Morrissey v. Brewer*,
    408 U.S. 471 (1972) .................................................................................................12

*N. Air Cargo v. U.S. Postal Serv.*,
    674 F.3d 852 (D.C. Cir. 2012) .................................................................................17

*National Council & Resistance of Iran v. Department of State*,
    251 F.3d 192 (D.C. Cir. 2001) .........................................................................12, 16

*Orvis v. Brownell*,
    345 U.S. 183 (1953) ...................................................................................................3

*People's Mojahedin Org. of Iran v. Dep't of State*,
    182 F.3d 17 (D.C. Cir. 1999) ...................................................................................12

*Propper v. Clark*,
    337 U.S. 472 (1949) ...................................................................................................3

*Regan v. Wald*,
    468 U.S. 222 (1984) ...................................................................................................3

*Sulemane v. Mnuchin*,
    Civ. A. No. 16-1822 (TJK), 2019 WL 77428 (D.D.C. Jan. 2, 2019)........................16

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) .................................................................................................11

*Zevallos v. Obama*,
    10 F. Supp. 3d 111 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) ...........10, 13

*Zevallos v. Obama*,
    793 F.3d 106 (D.C. Cir. 2015) .......................................................................10, 13, 15

**STATUTES**

5 U.S.C. § 706...........................................................................................................17, 18

8 U.S.C. § 1189 .................................................................................................................6

50 U.S.C. § 1701 ...............................................................................................................3

*50 U.S.C. § 1702 ...............................................................................................3, 4, 9, 15

50 U.S.C. § 4305 ...............................................................................................................2

Pub. L. No. 107-56, 115 Stat. 272 (2001) .........................................................................4

**RULES**

Fed. R. Civ. P. 56 ...........................................................................................................10

**REGULATIONS**

31 C.F.R. Part 501 ............................................................................................................5

31 C.F.R. Part 594 ............................................................................................................5

31 C.F.R. § 501.807 ...............................................................................................5, 14, 15

31 C.F.R. § 594.801 ..........................................................................................................5

31 C.F.R. § 594.802 ..........................................................................................................5

**OTHER AUTHORITIES**

40 Stat. 411 (codified as amended at 50 U.S.C. §§ 4301 *et seq*) ......................................3

Blocking Assets & Prohibiting Transactions with Significant Narcotics Traffickers,
   Exec. Order No. 12978, 60 Fed. Reg. 54579 (Oct. 21, 1995).......................................4

*Blocking Property & Prohibiting Transactions with Persons Who Commit, Threaten to
   Commit, or Support Terrorism,
   Exec. Order No. 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001) ........................... *passim*

Blocking Property of Additional Persons Contributing to the Situation in Ukraine,
   Exec. Order No. 13661, 79 Fed. Reg. 15535 (Mar. 19, 2014).......................................3

Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption,
   Exec. Order No. 13818, 82 Fed. Reg. 60839 (Dec. 20, 2017).......................................7

Classified National Security Information,
   Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec, 29, 2009)..........................................8

S. Rep. No. 95-466 (1977),
   *reprinted in* 1977 U.S.C.C.A.N. 4540, *codified at* 50 U.S.C. §§ 1701-1706 ..............3

National Counterterrorism Center, Counter Terrorism Guide,
   https://www.dni.gov/nctc/groups/hizballah.html ..........................................................6

U.S. Dep't of Treasury, Resource Center,
   https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/
   20160107.aspx ..............................................................................................................9

*U.S. Dep't of the Treasury, Press Release
   https://home.treasury.gov/news/press-releases/sm0388 ..........................................6, 13

## INTRODUCTION

The U.S. Department of the Treasury Office of Foreign Assets Control ("OFAC") conducted an investigation and found that Plaintiff Mohammad Ibrahim Bazzi is a key Hizballah financier who provided millions of dollars to the terrorist organization over the course of many years.  OFAC therefore designated Bazzi as a Specially Designated Global Terrorist ("SDGT") pursuant to Executive Order 13224 ("EO 13224"), blocking his property and interests in property that are subject to United States jurisdiction, and generally prohibiting U.S. persons from engaging in transactions with him.

Rather than dispute the fact that he engaged in such illicit activities, Bazzi brings this lawsuit to challenge the manner in which OFAC notified him about its decision to designate him as a SDGT and place him on the list of Specially Designated Nationals and Blocked Persons.  Specifically, he claims that he received insufficient notice in violation of the Fifth Amendment's Due Process Clause and the Administrative Procedure Act ("APA").  But Bazzi has alleged *no* connection with the United States, let alone one sufficient to entitle him to constitutional protections.  Also, OFAC has provided Bazzi with the unclassified and otherwise not privileged or protected portions of the administrative record, and he fails to identify an entitlement to anything further under the APA.  Accordingly, both of Bazzi's claims fail.

In any event, OFAC provided Bazzi ample notice on the day of his designation.  In a press release, the agency notified him that that he was designated pursuant to EO 13224 "for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah."  To support this conclusion, OFAC disclosed that Bazzi provided millions of dollars to Hizballah that was generated from his business activities, listed the countries in which he operates, and identified his associates who were also designated for their connections to the organization.  In addition to the press release, OFAC subsequently announced

1

the basis for Bazzi's designation in the Federal Register, making clear that he was designated under Section 1(d)(i) of EO 13224.  And on top of that, OFAC provided Bazzi with the administrative record underlying his designation.  While OFAC redacted classified and otherwise privileged or protected information from the administrative record, Bazzi received the unclassified and non-privileged portions, and OFAC also provided Bazzi with an unclassified summary of classified information.  And that summary provided additional details supporting OFAC's decision, such as a country Bazzi used to transfer funds to Hizballah, a relationship that he facilitated between a narcotics trafficker and a Hizballah member, the names of businesses he operated with that Hizballah member, and timeframes.  OFAC's multiple disclosures plainly provided Bazzi an opportunity to understand and respond to facts underlying his designation, and in failing to dispute those facts, he effectively concedes his Hizballah connections and the appropriateness of his designation.

For these reasons, as well as discussed more fully below, the Court should enter judgment for Defendants.

## **BACKGROUND**

**I.      Statutory and Regulatory Background**

**A.      Historical Overview**

For nearly its entire history, the U.S. has utilized economic sanctions as a tool in its foreign policy and national security arsenals.  During most of the twentieth century, U.S. sanctions programs were governed by the Trading With the Enemy Act ("TWEA"), enacted in 1917.  *See* 40 Stat. 411 (codified as amended at 50 U.S.C. § 4301 *et seq.*).  As amended in 1933, TWEA granted the President "broad authority" to "investigate, regulate . . . prevent or prohibit . . . transactions" in times of war or declared national emergencies.  *See* 50 U.S.C. § 4305(b)(1); *Dames & Moore v. Regan*, 453 U.S. 654, 672 (1981).  TWEA conveys to the Executive Branch the authority to regulate,

prevent, or prohibit transactions, which has been consistently interpreted to encompass the power to block or freeze a person's property.  *See, e.g.*, *Orvis v. Brownell*, 345 U.S. 183, 187-88 (1953); *Propper v. Clark*, 337 U.S. 472, 483-84 (1949).

## B.        International Emergency Economic Powers Act ("IEEPA")

In 1977, Congress amended TWEA and enacted IEEPA.  *See* S. Rep. No. 95-466, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4540, 4541, *codified at* 50 U.S.C. §§ 1701-1706.  IEEPA extended the President's authority to declare national emergencies, while TWEA's application was limited to periods of declared wars.  *See Regan v. Wald*, 468 U.S. 222, 227-28 (1984).  Although the broad authorities granted to the President under IEEPA remain essentially the same as those under TWEA, with certain limited exceptions, *see id.* at 228, IEEPA requires the President to declare a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States," *see* 50 U.S.C. § 1701(a).  Once such a national emergency is declared, IEEPA authorizes the President to:

> . . . direct and compel, nullify, void, prevent or prohibit, any . . . transfer . . . of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest . . . with respect to any property, subject to the jurisdiction of the United States . . . .

*Id.* § 1702(a)(1)(B).

Pursuant to this expansive authority, Presidents have designated persons under sanctions programs based on IEEPA in response to a variety of declared national emergencies.  *See, e.g.*, Blocking Property of Additional Persons Contributing to the Situation in Ukraine, EO 13661, 79 Fed. Reg. 15535 (Mar. 19, 2014) (blocking assets of persons determined "to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly . . . a senior official of the Government of the Russian Federation" after finding that government's actions and policies

3

with respect to Ukraine "constitute an unusual and extraordinary threat to the national security and foreign policy of the United States"); Blocking Assets & Prohibiting Transactions with Significant Narcotics Traffickers, EO 12978, 60 Fed. Reg. 54579 (Oct. 21, 1995) (blocking assets of persons who "play a significant role in international narcotics trafficking centered in Colombia").

In October 2001, the United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 amended IEEPA.  Among other things, the amendments provided that, in case of judicial review of an IEEPA-based blocking designation, an agency record containing classified information "may be submitted to the reviewing court ex parte and in camera."  *See* 50 U.S.C. § 1702(c), added by Pub. L. No. 107-56, § 106, 115 Stat. 272, 278 (2001).

### C.   Executive Order 13224

In the wake of the September 11, 2001 terrorist attacks, the President issued Executive Order 13224, "find[ing] that grave acts of terrorism and threats of terrorism committed by foreign terrorists," and "the continuing and immediate threat of further attacks on United States nationals or the United States constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States."  Blocking Property & Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, EO 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001).  The President therefore "decalare[d] a national emergency to deal with that threat" and delegated to the Secretary of the Treasury the authority to, in consultation with the Secretary of State and Attorney General, block all property and interest in property of persons who, as relevant here, are determined "to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorisms or those persons listed in the Annex to [EO 13224] or determined to be subject to th[at] order."  *Id.* § 1(d)(i).

EO 13224 authorizes the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, "to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA . . . as may be necessary to carry out the purposes of this order," and to re-delegate such functions as appropriate. *Id.* § 7. Pursuant to a delegation of authority by the Secretary of the Treasury, *see* 31 C.F.R. § 594.802, OFAC has promulgated regulations to implement EO 13224. *See generally* 31 C.F.R. Pt. 594 ("Global Terrorism Sanctions Regulations").

An individual or entity designated by OFAC pursuant to EO 13224 is referred to as a "Specially Designated Global Terrorist" ("SDGT"), and the individual or entity is included on the list of Specially Designated Nationals and Blocked Persons ("SDN List") maintained by OFAC. Once designated, an SDGT may "seek administrative reconsideration" of the designation, or may "assert that the circumstances resulting in the designation no longer apply." 31 C.F.R. § 501.807; *see id.* § 594.801 (referencing 31 C.FR. part 501, subpart E). In doing so, the SDGT "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation," and may also "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." *Id.* § 501.807(a). Additionally, the SDGT may request a meeting with OFAC. *Id.* § 501.807(c). After conducting a review, OFAC will "provide a written decision" to the SDGT. *Id.* § 501.807(d). OFAC's regulations do not limit the number of times a SDGT may seek to challenge its designation administratively. *See generally id.* § 501.807.

## II.    Factual Background

### A.    Bazzi's Designation Under EO 13224

"Hizballah has been involved in numerous anti-US terrorist attacks, including the suicide truck bombings of the US Embassy in Beirut in April 1983, the US Marine barracks in Beirut in October 1983, and the US Embassy annex in Beirut in September 1984, as well as the hijacking of

TWA 847 in 1985 and the Khobar Towers attack in Saudi Arabia in 1996." National Counterterrorism Center, Counter Terrorism Guide.[1] The Secretary of State has designated Hizballah a Foreign Terrorist Organization under section 219 of the Immigration and Nationality Act, 8 U.S.C. § 1189. Administrative Record ("A.R.") at 18, 144. Further, in consultation with the Secretary of the Treasury and the Attorney General, the Secretary of State designated Hizballah pursuant to EO 13224 for committing, or posing a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States. A.R. 144.

On May 17, 2018, OFAC designated Bazzi pursuant to section 1(d)(i) of EO 13224 for "assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of Hizballah." *See* U.S. Dep't of the Treasury, Press Release;[2] A.R. 4. Simultaneously, OFAC designated five companies located in Europe, West Africa, and the Middle East for being owned or controlled by Bazzi and another SDGT. A.R. 3.

    i.       Press Release

In announcing the designation, the agency issued a press release explaining that Bazzi "is a key Hizballah financier who has provided Hizballah financial assistance for many years and has provided millions of dollars to Hizballah generated from his business activities." A.R. 3. Further, the press release disclosed that Bazzi "maintains ties" to previously designated Hizballah financiers Adham Tabaja, and Ali Youssef Charara. A.R. 5.

The press release also identified other associates of Bazzi. Specifically, Abdallah Safi-Al-Din, "Hizballah's representative to Iran" who was similarly designated on May 17, 2018 pursuant

---

[1] https://www.dni.gov/nctc/groups/hizballah.html (last visited August 20, 2019).

[2] *Treasury Targets Key Hizballah Financing Network and Iranian Conduit* https://home.treasury.gov/news/press-releases/sm0388 (last visited August 20, 2019).

to EO 13224, and explained that "[b]etween 2009 and 2010," he and Bazzi "worked with the Central Bank of Iran to expand banking access between Iran and Lebanon." *Id.* Also, it pointed out that Bazzi is "a close associate" of Yahya Jammeh, "the corrupt former leader of The Gambia who, in addition to ordering targeted assassinations, plundered The Gambia's state coffers for his personal gain." A.R. 3, 5. Jammeh was listed in the annex to EO 13818, which sanctioned individuals whose human rights abuse and corruption reached "such scope and gravity that they threaten the stability of international political and economic systems." Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption, EO 13818, 82 Fed. Reg. 60839 (Dec. 20, 2017). And the release disclosed Bazzi's business ties to the Ayman Joumaa Drug Trafficking and Money Laundering Organization, an entity sanctioned pursuant to the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"). A.R. 5.[3]

        ii.     Federal Register Notices

OFAC also published on May 23, 2018, a Federal Register Notice announcing Bazzi's designation as a SDGT and placement on the SDN list. In contrast to the basis for designation identified in the press release, *see* A.R. 4, the initial Federal Register Notice mistakenly indicated that Bazzi was designated under section 1(c) of EO 13224 "for acting for or on behalf of Hizballah, an entity determined to be subject of E.O. 13224." A.R. 14 (capitalization removed). Bazzi never asked OFAC to clarify that notice before he filed this lawsuit. Nevertheless, OFAC updated the Federal Register Notice on April 19, 2019, clarifying that he was designated pursuant to section 1(d)(i) of EO 13224, "for assisting in, sponsoring, or providing financial, material, or technological

---

[3] Earlier this year, Judge Kelly denied Ayman Saied Joumaa's challenge to his designation as a specially designated narcotics trafficker under the Kingpin Act. *See Joumaa v. Mnuchin*, Civ. A. No. 17-2780 (TJK), 2019 WL 1559453 (D.D.C. Apr. 10, 2019), *appeal filed*, No. 19-5166 (D.C. Cir. June 6, 2019).

support for, or financial or other services to or in support of, Hizballah, an entity whose property and interests in property are blocked pursuant to EO 13224."  A.R. 16 (capitalization removed).

**B.      Bazzi's Lawsuit and Additional Notice**

Bazzi filed this lawsuit against Defendants OFAC and Andrea M. Gacki, in her official capacity as Director of that office (collectively, "Defendants").  Compl. ¶¶ 13-14, ECF No. 1.  His original complaint challenged his designation as a SDGT pursuant to EO 13224 and his inclusion on OFAC's SDN List of persons whose property and interests in property are blocked.  *See* Compl., ¶¶ 35-52, ECF No. 1.  He further alleged that Defendants violated the APA by not providing him with sufficient notice of the basis for his designation.  *Id.* ¶¶ 53-57.

i.      Evidentiary Memorandum

After answering the Complaint, OFAC released to Bazzi the administrative record underlying his designation, which includes the "evidentiary memorandum" setting forth OFAC's reasons for designating Bazzi as a SDGT, as well as supporting exhibits.  As required, OFAC withheld the classified and otherwise privileged or protected information in the memorandum and supporting exhibits.  *See* Certification of A.R. ¶ 4.[4]  OFAC's memorandum explains the factual and legal bases for its determination pursuant to EO 13224 that "Bazzi assists in, sponsors, or provides financial, material, or technological support for, or financial or other services to or in support of Hizballah."  A.R. 20 (capitalization removed).  Under that heading, the memorandum includes nine supporting paragraphs, which are redacted because they are classified.  *Id.* at 20-22.[5]

---

[4] Bazzi notes that some of the information redacted is marked as unclassified.  Am. Compl. ¶¶ 3, 17, ECF No. 9.  As Defendants previously explained to Bazzi, such information may not be considered classified on its own in a different context, but it is classified by compilation here given its context in Bazzi's evidentiary.  *See* Classified National Security Information, EO 13526 Sec. 1.7 (e), 75 Fed. Reg. 707 (Dec, 29, 2009).  OFAC also redacted non-responsive information about another designated entity that is not a party to this lawsuit.  *See* Certification of A.R. ¶ 4.

[5] As authorized by IEEPA, Defendants intend to lodge, on an *ex parte*, *in camera* basis, a copy of the record containing unredacted classified information with the Court when the parties file the joint

ii.     Unclassified Summary

OFAC also provided Bazzi an unclassified summary of classified information in the evidentiary memorandum.  That summary, located in the administrative record, explains that Bazzi "is a key financier" for Hizballah who "has provided millions of dollars to" the terrorist group that were "generated from his business activities."  A.R. 1.  He "has provided Hezbollah with financial assistance for many years," and he "operates in Belgium, Lebanon, and several countries in West Africa."  *Id.*  The unclassified summary further confirms that Bazzi "maintains direct ties" to previously designated Hezbollah financiers, such as Ali Youssef Charara[6] and Adham Husayn Tabaja.  *Id.*

The summary builds on these disclosures by adding details not mentioned in the press release.  It explains that "[a]s of early 2017, Bazzi facilitated the relationship between designated narcotics trafficker Ali Kharroubi and Hizballah member and businessperson Ali Sharara."  *Id.* Also, it discloses that "[a]s of early 2017, Bazzi and Ali Sharara utilized The Gambia to transfer funds to Hizballah," and that the two operated several joint businesses in that country, including Spectrum Investment Group S.A.L. Holding and Euro Africa Group.  *Id.*

The unclassified summary also explains that "[i]n 2015, Bazzi and Adham Tabaja, a Hizballah insider, collaborated on financial transactions."  *Id.*  And it expands upon Bazzi's work with Abdallah Safi-al-Din, going beyond the press release's account by explaining that they also were involved in delivering cash to Iran in 2010.  *Id.*

---

appendix required by Local Civil Rule 7(n).  *See* 50 U.S.C. § 1702(c) ("[I]f the determination was based on classified information . . . such information may be submitted to the reviewing court ex parte and in camera").

[6] Ali Youssef Charara is also referred to as Ali Youssef Sharara.  *See* U.S. Dep't of Treasury, Resource          Center,          https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20160107.aspx (last visited August 28, 2019).  Similarly, Hizballah is alternatively spelled Hezbollah.

iii.    Amended Complaint

After receiving the administrative record, Bazzi filed an Amended Complaint, dropping his challenge to the adequacy of the evidence supporting his designation, and instead asserting only that OFAC has not provided him the sufficient notice of the basis of his designation.  Am. Compl. ¶¶ 5, 26-36.  Specifically, in light of the redactions of classified material in the administrative record, he asserts that the agency has not "provide[d him] with an understanding of the allegations supporting his designation," and that this purported lack of sufficient post-deprivation notice violates his rights to due process, *id.* ¶¶ 28, 30 (Count I), and the APA, *id.* ¶ 36 (Count II).  The Amended Complaint seeks a variety of declaratory and injunctive relief, including an order setting aside "Defendants' reliance on irrelevant, immaterial, or unduly repetitious evidence," requiring "Defendants to adequately explain why all redacted portions of the administrative record" have not been publicly disclosed, and ordering Defendants to provide legally sufficient notice.  Am. Compl. Prayer for Relief.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's role is "limited . . . in reviewing the administrative record," in an APA action, as the "the district judge sits as an appellate tribunal." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) (citation omitted).  "The entire case on review is a question of law," and "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Id.* (citations omitted).

## ARGUMENT

### I.    Bazzi's Constitutional Claim Fails.

Rather than dispute his Hizballah connections, Bazzi takes issue with the manner in which OFAC notified him about its decision to designate him pursuant to EO 13224, claiming that OFAC violated his Fifth Amendment due process rights.  Am. Compl. ¶¶ 26-30.  But as a foreign person lacking presence in and substantial contacts with the United States, Bazzi does not have standing to assert any such rights.  And in any event, the notice provided by OFAC accords with any process that Bazzi may be due.

#### A. Bazzi Has No Alleged Connection to the United States and Therefore Cannot Assert a Due Process Claim.

"[N]on-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections."  *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004); *accord Johnson v. Eisentrager*, 339 U.S. 763, 770-71 (1950).  Some constitutional protections may apply when aliens "have come within the territory of the United States and developed substantial connections with this country," or "accepted some societal obligations."  *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271, 273 (1990).  Although the D.C. Circuit has not directly addressed what types of connections are substantial enough to satisfy that standard within the context of an OFAC sanctions case, the Circuit's discussion of the issue in cases involving challenges to the Secretary of State's designation of a Foreign Terrorist Organization ("FTO") is instructive.  *Cf. Kadi v. Geithner*, 42 F. Supp. 3d 1, 25-26 (D.D.C. 2012) (discussing D.C. Circuit precedent involving challenges to FTO designations).  In *National Council of Resistance of Iran v. Department of State*, the D.C. Circuit concluded that two Iranian organizations could bring a due process challenge because, after reviewing the entire record including classified information, the Court found that they could "rightly lay claim to having come within the territory of the United States and developed

11

substantial connections with this country," namely an "overt presence within the National Press Building in Washington, D.C." and a "claim[] [of] an interest in a small bank account."  251 F.3d 192, 201-02 (D.C. Cir. 2001).  By contrast, in *32 County Sovereignty Committee v. Department of State*, the D.C. Circuit rejected the petitioners' claim to constitutional rights where they "demonstrated neither a property interest nor a presence in this country."  292 F.3d 797, 799 (D.C. Cir. 2002); *see also People's Mojahedin Org. of Iran v. Dep't of State,* 182 F.3d 17, 22 (D.C. Cir. 1999) ("A foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise.").

Here, Bazzi's allegations in his Amended Complaint fail to provide him any basis to seek relief based on the Constitution.  He acknowledges that he is a citizen of Lebanon with no apparent physical presence in the United States.  *See* Am. Compl. ¶ 9.  And he does not allege that he has any property in the United States.  *See generally id.*  In short, Bazzi fails to show any entitlement to due process, and his Amended Complaint provides no authority suggesting that he can claim such constitutional protections here.

Defendants "therefore did not have to provide [Bazzi] with any particular process," *32 Cty. Sovereignty Comm.*, 292 F.3d at 799, and his constitutional claim therefore fails.

**B. OFAC Provided Bazzi Extensive Notice of His Connections to Hizballah.**

Even if Bazzi could assert a Fifth Amendment claim—and he cannot—the Court should nevertheless hold that OFAC's well-established administrative procedures satisfy due process.  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it."  *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (internal quotation marks and citation omitted).  In the context of OFAC's

designation of a SDGT—where pre-deprivation notice is not required, *see Zevallos*, 793 F.3d at 116; *Holy Land Found. for Relief and Dev. v. Ashcroft*, 333 F.3d 156, 163-64 (D.C. Cir. 2003)—due process mandates only that OFAC provide Bazzi with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence in response," *Zevallos*, 10 F. Supp. 3d at 131.

Here, OFAC's disclosures provided Bazzi with sufficient post-deprivation notice.  On the day he was designated, the agency issued a press release explaining that Bazzi "was designated for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah."  A.R. 4; *see also* U.S. Dep't of the Treasury, Press Release.[7]  The press release disclosed Bazzi's illicit activities, including that he "is a key Hizballah financier who has provided Hizballah financial assistance for many years."  A.R. 4.  It further provided an amount for such support, as well as the source of that funding.  *See id.* ("millions of dollars . . . generated from his business activities.").  And it identified his associates, explaining that he "maintains ties to Hizballah financiers" Adham Tabaja and Ali Youssef Charara.  Apart from that press release, OFAC's April 2019 Federal Register notice further announced that Bazzi was designated pursuant to section 1(d)(i) of EO 13224, A.R. 16.[8]

Even though that notice alone sufficed, OFAC nevertheless provided Bazzi a non-privileged and unclassified summary of otherwise classified information in his evidentiary memorandum.  Besides confirming that Bazzi is a Hizballah financier who provided the organization "millions of dollars . . . generated from his business activities," and has ties to Charara and Tabaja, the summary provides additional detail about Bazzi's illicit work with his associates.  For example, it explains

---

[7] https://home.treasury.gov/news/press-releases/sm0388 (last visited August 28, 2019).
[8] The reference to Section 1(c) of EO 13224 in the May 2018 Federal Register notice was rendered harmless by OFAC's subsequent clarifications.  Even Bazzi acknowledges that OFAC published the April 2019 Federal Register Notice "to clarify" the basis of his designation.  Am. Compl. ¶ 15.

that Bazzi facilitated the relationship between Hizballah member and businessperson Ali Sharara and designated narcotics trafficker Ali Karroubi.  A.R. 1.  Moreover, it discloses that Bazzi and Sharara utilized The Gambia to transfer funds to Hizballah, and the two operated several joint businesses in that country, including Spectrum Investment Group S.A.L. Holding and Euro Africa Group.  *Id.*  The summary even provides timeframes, explaining that "[a]s of early 2017," Bazzi facilitated the relationship between the Hizballah member and narcotics trafficker, and utilized The Gambia to transfer funds to Hizballah.  *Id.*

This information provides Bazzi a clear path to "seek administrative reconsideration" of the designation or "assert that the circumstances resulting in the designation no longer apply."  31 C.F.R § 501.807.  He "may submit arguments or evidence that [he] believes establishes that insufficient basis exists for the designation."  *Id.* § 501.807(a).  And with the notice that OFAC provided, he knows facts he needs to dispute.  For example, he could try to dispute the charge that he "is a key Hizballah financier who has provided" the terrorist group "financial assistance for many years," totaling "millions of dollars" that was "generated from his business activities."  A.R. 4.  *See, e.g., Fares v. Smith*, 901 F.3d 315, 321-22 (D.C. Cir. 2018) (noting that SDNs challenging their designation submitted an "independent audit" to OFAC that was "completed by a professional-services and auditing firm" in support of their petition for "delisting").  Likewise, he could dispute his ties with Hizballah financiers Tabaja and Charara.[9]

Rather than do so, Bazzi labels this notice as "conclusory," Am. Compl. ¶¶ 18-19, and claims that he has not been provided necessary "reasoning," *id.* ¶ 20, or "details," *see id.* ¶ 21-23.  But Bazzi received the relevant non-classified, non-privileged information in the administrative record, *see* Certification of A.R. ¶ 4 ("the documents described in the attached index constitute a true,

---

[9] *See also* 31 C.F.R. § 501.807(a) (explaining other steps designee could take to try to negate basis for designation).

correct, and complete copy of the non-privileged documents that were directly or indirectly considered . . . .").  And that notice was robust, providing details "about his alleged [illicit] activities," including "amounts of money," the "type" of support, "time frames, and locations," and his "associations with other [SDGTs]."  *Joumaa v. Mnuchin*, 2019 WL 1559453, at *10 (D.D.C. Apr. 10, 2019) (rejecting argument that unclassified evidence "was too conclusory").  OFAC's notice more than satisfies due process, as Bazzi has "been apprised . . . of the government's view regarding the basis for [his] designation[], and as such, can meaningfully proffer rebuttal evidence and argument to OFAC to contest [his] designation[]."  *Fares v. Smith*, 249 F. Supp. 3d 115, 127 (D.D.C. 2017) (internal quotation marks and citation omitted), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018); *see also Zevallo*s, 793 F.3d at 116-17 (finding that disclosure of unclassified portions of the record and SDN's ability to challenge his designation pursuant to 31 C.F.R. § 501.807 satisfied due process requirements of adequate notice and a meaningful opportunity to contest OFAC's designation).[10]

Because Bazzi already has legally sufficient notice, his argument here effectively amounts to seeking the unredacted administrative record.  But IEEPA authorizes OFAC to rely upon classified information without disclosing it, *see* 50 U.S.C. § 1702(c), and courts regularly allow the practice when evaluating challenges to sanctions programs, *e.g.*, *Fares*, 901 F.3d at 324-25 (rejecting argument that OFAC cannot rely on undisclosed classified and law enforcement privileged information to support a designation); *Kadi*, 42 F. Supp. 3d at 24 (finding that "it was

---

[10] Bazzi also complains that OFAC disclosed his association with Yahya Jammeh and the Joumaa Drug Trafficking and Money Laundering Organization to "denigrat[e] [him] in OFAC's press release."  Am. Compl. ¶ 24.  But he does not dispute those connections, and his objections to how OFAC communicates to the public are irrelevant.  *E.g.*, *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010) ("[S]tigma alone is insufficient to invoke due process protections."); *Joshi v. Nat'l Transp. Safety Bd.*, 791 F.3d 8, 11-12 (D.C. Cir. 2015) ("practical consequences" are not reviewable agency action).  And in any event, the administrative record shows that the agency exercised restraint in its press release, as it did not publish that Bazzi reportedly signed and sealed visa applications for dozens of young women who were trafficked from The Gambia into Lebanon, even though that report was included in the record.  *See* A.R. 23, 212.

wholly proper for OFAC to rely on classified material in making its determination").  And "due process require[s] the disclosure of *only* the unclassified portions of the administrative record." *Holy Land Found.*, 333 F.3d at 164 (internal quotation marks and citation omitted); *Nat'l Council of Resistance of Iran*, 251 F.3d at 208-09 (holding that under due process clause, agency "need not disclose the classified information to be presented *in camera* and *ex parte* to the court," and that "[t]his is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect"); *see also Jifry*, 370 F.3d at 1183-84 (holding that government satisfied notice requirements of due process by informing foreign national pilots that their airmen certificates had been revoked based on TSA's determination that they were a "security threat" without requiring agency to disclose the reasons for the determination, which were classified).

Thus, even if Bazzi could claim due process protection (and he cannot), his claim still fails on the merits.

## II.    OFAC Provided Bazzi With Sufficient Notice Under the APA.

Bazzi also recasts his notice-based argument as an APA claim, Am. Compl. ¶¶ 31-36 (Count II), but that claim fares no better.  While the APA require OFAC to provide Bazzi with the administrative record underlying his designation once a lawsuit is initiated, *cf. Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record"), it does not entitle him to the classified or otherwise protection portions of that record.  *See, e.g., Sulemane v. Mnuchin*, Civ. A. No. 16-1822 (TJK), 2019 WL 77428, No. 16-1822, at *7 (D.D.C. Jan. 2, 2019) (explaining that the APA "does not require OFAC to provide Sulemane the classified or law enforcement-privileged information supporting th[e] grounds" for his designation). Defendants have already provided Bazzi the "true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered in OFAC's decision to designate" him.

Certification of A.R. ¶ 4.  And the unclassified, non-privileged summary that OFAC provided him represents the extent of additional releasable information at this time.  *See id.*[11]  Bazzi fails to identify an entitlement to anything further under the APA.  *Cf.* Am. Compl. ¶¶ 31-36 (citing only 5 U.S.C. § 706(2)(A), (D)).  In any event, as explained above in response to Bazzi's due process claim, whatever level of notice might be required by the APA was satisfied here in light of the May 17, 2018 press release, the April 19, 2019 Federal Register notice, and the administrative record, including the unclassified summary of classified information in the evidentiary memorandum.  *See supra* Part I.  Accordingly, Bazzi's APA claim likewise fails.[12]

### III.     Bazzi Does Not Even Dispute Having Hizballah Connections, and Ample Evidence Supports OFAC's Decision to Designate Him as a SDGT.

As the unclassified administrative record makes clear—and the Court's *ex parte*, *in camera* review of the classified record will confirm—ample evidence supports Bazzi's designation.  Even if Bazzi could somehow show some error with the notice he received (and he cannot), any such error would therefore be harmless and insufficient to warrant the relief he seeks.  *See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 990 (9th Cir. 2012) (affirming dismissal of

---

[11] Although not clearly connected to either of his claims, Bazzi apparently seeks a privilege log.  *See* Am. Compl. Prayer for Relief ¶ C.  But he cites no authority for such a demand, and he is not entitled to one here.  *See Fares*, 249 F. Supp. 3d at 129 n.3 (rejecting argument that OFAC was "required to produce a privilege log in conjunction with the redacted administrative record").  "[I]t is far from the norm to require agencies to produce privilege logs when they exclude material from an administrative record.  In fact, the general rule is that when documents are not part of the administrative record—having been omitted on privilege grounds—an agency that withholds these privileged documents is not required to produce a privilege log to describe the documents that have been withheld."  *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 317 (D.D.C. 2016) (internal quotation marks and citation omitted).

[12] In the event the Court were to find that the notice provided by OFAC was inconsistent with the APA, the proper remedy would be a remand to the agency, not an order vacating Bazzi's designation.  *See, e.g.*, *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal.").

due process claims because even if SDGT received "constitutionally adequate notice, we are confident that it would not have changed OFAC's ultimate designation determination."); 5 U.S.C. § 706 (requiring courts reviewing agency action to take "due account . . . of the rule of prejudicial error").  Indeed, the harmlessness of any error is confirmed by the fact that Bazzi does not even dispute that he is a key Hizballah financier, an associate of the designated individuals who OFAC identified, or a participant in the activities that OFAC described.

The Court should therefore enter judgment in favor of Defendants on all of Bazzi's claims.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment for Defendants.

Dated August 30, 2019                               Respectfully submitted,

                                                    JOSEPH H. HUNT
                                                    Assistant Attorney General

                                                    DIANE KELLEHER
                                                    Assistant Branch Director

                                                    */s/ Kevin Snell*
                                                    KEVIN SNELL
                                                    Trial Attorney
                                                    United States Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    1100 L Street, N.W.
                                                    Washington, DC 20005
                                                    Tel: (202) 305-0924
                                                    Fax: (202) 616-8460
                                                    Email:  Kevin.Snell@usdoj.gov