# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOHAMMAD IBRAHIM BAZZI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:19-cv-00484 (RDM) |
| v. | ) | |
| | ) | |
| ANDREA M. GACKI, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.      Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          A.  International Emergency Economic Powers Act ("IEEPA") . . . . . . . . . . . . . 2

          B.  Executive Order 13224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          C.  Global Terrorism Sanctions Regulations ("GTSR") . . . . . . . . . . . . . . . . . . 3

          D.  Hizballah International Financing Prevention Act of 2015 ("HIFPA") . . . . . 4

          E.  Hizballah Financial Sanctions Regulations ("HFSR") . . . . . . . . . . . . . . . . 5

    II.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          A.  Bazzi's Designation by OFAC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          B.  OFAC's Disclosure of the Administrative Record . . . . . . . . . . . . . . . . . . . 6

          C.  Bazzi's Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.      Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.      Bazzi is Entitled to Summary Judgment on Count I Because Defendants Failed to Provide Bazzi with Adequate Notice as to the Reasons for His Designation Under E.O. 13224 and Acted in Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          A.  Bazzi Can Assert a Fifth Amendment Due Process Claim . . . . . . . . . . . . . .10

          B.  Defendants Violated the Constitution's Post-Deprivation Due Process Requirement of Notice and a Hearing by Failing to Provide Adequate Notice to Bazzi as to Their Decision to Designate Him Under E.O. 13224 . . . . . . . 14

II.     Bazzi is Entitled to Summary Judgment on Count II Because Defendants Failed to Provide Him with Adequate Notice as to the Reasons for His Designation Under E.O. 13224 In Violation of the Administrative Procedure Act's Notice Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    Bazzi is Challenging the Substance of OFAC's Decision to Designate Him Through its Administrative Reconsideration Process, and OFAC's Assertion that Ample Evidence in the Classified Record Supports his Designation Makes Clear that Defendants Violated His Rights to Due Process under the Constitution and the APA and Intend to Continue to Do So . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

**CASES**                                                           **PAGE(S)**

*32 Cty. Sovereignty Comm. v. Dep't. of St.*,
    292 F.3d 797 (D.C. Cir. 2002) ……………………………………………………………… 13

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*,
    686 F.3d 965 (9th Cir. 2012) …………………………………………………..... *passim*

*American-Arab Anti-Discrimination v. Reno*,
    70 F.3d 1045 (9th Cir. 1995) …………………………………………………….. 18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ……………………………………………………………... 9

*Boumediene v. Bush*,
    553 U.S. 723 (2008) ……………………………………………………………... 11, 12

*Carter v. George Washington U.*,
    387 F.3d 872 (D.C. Cir. 2004) …………………………………………...................... 9

*Carter v. Nat'l Sec. Agency*,
    962 F. Supp. 2d 130 (D.D.C. 2013) …………………………………………………… 17

*Fares v. Smith*,
    249 F. Supp. 3d 115 (D.D.C. 2017) …………………………………………... 15, 16, 19, 26

*Fares v. Smith*,
    901 F.3d 315 (D.C. Cir. 2018) ………………………………………….. 14, 16, 18, 19

*FBME Bank Ltd. v. Lew*,
    209 F. Supp. 3d 299 (D.D.C. 2016) …………………………………………………… 13

*General Elec. Co. v. E.P.A*,
    53 F.3d 1324 (D.C. Cir. 1995) …………………………………………………… 22

*Gete v. I.N.S.*,
    121 F.3d 1285 (9th Cir. 1997) …………………………………………………… 14

*Herandez v. United States*,
    757 F.3d 249 (5th Cir. 2014) ……………………………………………………... 11

*Hill v. U.S. Parole Comm'n*,
    No. 16-1476 (JEB), 2017 WL 2414446, (D.D.C. June 2, 2017) ………………………… 22

*Holy Land Found. v. Ashcroft*,
　　333 F.3d 156 (D.C. Cir. 2003) ………………………………………………… 15, 18

*Hopi Tribe v. Navajo Tribe*,
　　46 F.3d 908 (9th Cir. 1995) …………………………………………………..… 23

*Howmet Corp. v. E.P.A*,
　　614 F.3d 544 (D.C. Cir. 2010) …………………………………………………..… 22

*In re Anthem, Inc. Data Breach Litig.*,
　　236 F. Supp. 3d 150 (D.D.C. 2017) ………………………………………………… 17

*In Re Iraq Afg. Detainees Litig.*,
　　479 F. Supp. 2d 85 (D.D.C. 2007) ……………………………………………..…… 13

*In re Sealed Case*,
　　737 F.2d 94 (D.C. Cir. 1984) ……………………………………………..… 17

*Jifry v. F.A.A*,
　　370 F.3d 1174 (D.C. Cir. 2004) ………………………………………….….. 10, 11

*Joumaa v. Mnuchin*,
　　No. 17-2780 (TJK), 2019 WL 1559453, (D.D.C. Apr. 10, 2019) ……………………... 22

*Kadi v. Geithner*,
　　42 F. Supp. 3d 1 (D.D.C. 2012) ………………………………………………….. 10, 12, 13

*Kiareldeen v. Ashcroft*,
　　273 F.3d 542 (3d Cir. 2001) ……………………………………………..…… 19

*KindHearts for Charitable Humanitarian Dev. v. Geithner*,
　　647 F. Supp. 2d 857 (N.D. Ohio 2009) …………………………..…….… 14, 16, 21, 23

*King & Spalding LLP v. U.S. Dep't of Health and Hum. Servs.*,
　　330 F. Supp. 3d 477 (D.D.C. 2018) …………………………………………….…. 9

*Kiyemba v. Obama*,
　　555 F.3d 1022 (D.C. Cir. 2009) ……………………………………………….….. 11

*Kiyemba v. Obama*,
　　559 U.S. 131 (2010) …………………………………………………………….….. 11

*Kiyemba v. Obama*,
　　605 F.3d 1046 (D.C. Cir. 2010) ………………………………………………….….. 11

iv

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
   826 F.3d 492 (D.C. Cir. 2016) ……………………………………………….. 9

*Martinez-Aguero v. Gonzalez*,
   459 F.3d 618 (5th Cir. 2006) ……………………………………….……… 13

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ……………………………………………………...….. 14

*Maydak v. U.S. Dep't of Justice*,
   218 F.3d 760 (D.C. Cir. 2000) ………………………………………….…… 17

*Nat'l Council of Resistance v. Department of State*,
   251 F.3d 192 (D.C. Cir. 2001) ……………………………………….….... 12, 16, 18

*People's Mojahedin Org. v. Department of State*,
   327 F.3d 1238 (D.C. Cir. 2003) ……………………………………… 16, 18

*People's Mojahedin Org. of Iran v. U.S. Department of State*,
   613 F.3d 220 (D.C. Cir. 2010) …………………………………………...…. 26

*Phillippi v. C.I.A.*,
   546 F.2d 1009 (D.C. Cir.1976) ……………………………………….……... 17

*Qassim v. Trump*,
   927 F.3d 522 (D.C. Cir. 2019) ……………………………………………… 11

*Rafeedie v. I.N.S.*,
   880 F.2d 506 (D.C. Cir. 1989) ………………………………………………… 18

*Satellite Broadcasting Co., Inc. v. F.C.C.*,
   824 F.2d 1 (D.C. Cir. 1987) …………………………………………………… 22

*Sulemane v. Mnuchin*,
   No. 16-1822 (TJK), 2019 WL 77428, (D.D.C. Jan. 2, 2019) ………………….….. 17, 24

*Turkmen v. Ashcroft*,
   02-CV-2307 (JG), 04-CV-1809 (JG),
   2006 WL 1517743, (E.D.N.Y. May. 30, 2006) ………………………………...…… 17

*United States v. Davis*,
   905 F.2d 254 (9th Cir. 1990) ……………………………………………….. 11

*United States v. Tehrani*,
   826 F. Supp. 789 (D. Vt. 1993) …………………………………….……… 13

*United States v. Verdugo-Urquidez,*
    494 U.S. 259 (1990) …………………………………………………………… 10, 11

*Willis v. Nat'l Sec. Agency,*
    No. 17-cv-2038 (KBJ), 2019 WL 1924249, (D.D.C. Apr. 30, 2019) ………………… 17

*Zevallos v. Obama,*
    10 F. Supp. 3d 111 (D.D.C. 2014) …………………………………………...… 9, 15

*Zevallos v. Obama,*
    793 F.3d 106 (D.C. Cir. 2015) …………………………………………...… 9, 16, 26

**STATUTES**

5 U.S.C. § 552 …………………………………………………………………… 4

5 U.S.C. § 555 ………………………………………………………………… 23

5 U.S.C. § 706 ………………………………………………………………… 24

50 U.S.C. § 1701 ……………………………………………………………… 3

50 U.S.C. § 1702 ……………………………………………………………… 3

50 U.S.C. § 1704 ……………………………………………………………… 3

Hizballah International Financing Prevention Act of 2015,
    Pub. L. No. 114-102, 129 Stat. 2205, 2206-2207 (2015) ………………………..…… 5

**EXECUTIVE ORDERS**

Executive Order 13224 ………………………………………………………… 3

**REGULATIONS**

31 C.F.R. §501.807 …………………………………………………………... 1, 4, 23

31 C.F.R. § 566.201 ………………………………………………………..…… 5, 6

31 C.F.R. § 566.802 …………………………………………………………... 6

31 C.F.R. § 594.201 ………………………………………………………….... 3, 4, 6

31 C.F.R. § 594.801 …………………………………………………………... 4

31 C.F.R. § 594.802 ……………………………………………………………………... 4

68 Fed. Reg. 34,196 ……………………………………………………………………... 3

81 Fed. Reg. 22,185 ……………………………………………………………………... 5

**RULES**

Fed R. Civ. P. 56 ………………………………………………………………………… 9

**OTHER MATERIALS**

U.S. Dept. of the Treasury, *Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked*, Aug. 13, 2014 ……………………………………….… 6

# INTRODUCTION

Contrary to Defendants' suggestion, Plaintiff Mohammad Ibrahim Bazzi has not conceded any connections with Hizballah nor the appropriateness of his designation under Executive Order ("E.O.") 13224.  To be one hundred percent clear, Bazzi is neither a Hizballah financier, nor is he someone who provides support to Hizballah. He intends to prove as much through the administrative reconsideration process administered by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). 31 C.F.R. §501.807. In order to do so, however, he needs to understand OFAC's reasons for determining that he is a purported Hizballah financier who provides support for that organization, and thus why he has been designated under E.O. 13224.

This lawsuit challenges Defendants' failure to provide Bazzi with sufficient notice as to the basis for his designation in order for him to meaningfully challenge that designation through OFAC's administrative reconsideration process. Indeed, if anything has been conceded by the parties to this lawsuit, it is by the Defendants who have conceded that they have obscured from Bazzi information critical to their determination that he meets the designation criteria of E.O. 13224.  Def's. Mot. at 17-18, ECF No. 10.

This obscuration has left Bazzi with only the conclusory allegations the Defendants have leveled against him.  Despite Defendants' insistence that they have disclosed a sufficient amount of information for Bazzi to rebut, their disclosures amount to nothing more than restatements of conclusory allegations. For example, Defendants' view of "sufficient" notice includes declarations such as Bazzi "is a key Hizballah financier," and he has provided "financial assistance for many years" totaling "millions of dollars" that was "generated from his business activities." *Id*. at 9.

In painting the reasons for Bazzi's E.O. 13224 designation with such a broad brush, OFAC's premises assume the truth of its determination without a scintilla of evidence disclosed in support of that determination. This leaves Bazzi with critical unaddressed questions that are relevant to rebutting OFAC's determination during the administrative reconsideration process. For example, what transactions or set of transactions has OFAC based its conclusions on; on what dates or time-frames did these transactions occur; what businesses were used in support of Hizballah; what was the nature of the financial assistance OFAC believes he provided to Hizballah; etc.

This lawsuit ultimately seeks disclosures that will provide Bazzi notice as to the reasons for his designation, as opposed to solely the conclusions OFAC drew to support that designation. Disclosure of these reasons is necessary in order for Bazzi to have an opportunity to meaningfully participate in OFAC's administrative reconsideration process, and to ultimately secure a rescission of his designation. Accordingly, Defendants' Motion for Summary Judgement should be denied, and summary judgment should be granted in favor of Bazzi.

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

#### A.   International Emergency Economic Powers Act

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*., is the statutory basis under which most of the U.S. economic sanctions implemented and administered by Defendants are promulgated, including for purposes relevant herein, Executive Order 13224 and the Global Terrorism Sanctions Regulations, 31 C.F.R. Part 594. IEEPA allows the President "to deal with any unusual or extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of

the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). To do so, IEEPA provides the President with certain powers to regulate transactions involving "any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B). IEEPA further authorizes the President to issue Executive orders to impose sanctions and to issue regulations to exercise those authorities. 50 U.S.C. § 1704.

### B.       Executive Order 13224

On September 23, 2001, President George W. Bush issued E.O. 13224 in response to the "grave acts of terrorism and threats of terrorism committed by foreign terrorists…and the continuing and immediate threat of further attacks on United States nationals or the United States…." Exec. Order No. 13224, 3 C.F.R 13224 (2001). In order to deal with that threat, the President declared a national emergency triggering his IEEPA authorities. *Id.*

E.O. 13224 authorizes sanctions on, *inter alia*, persons determined "to assist in, sponsor, or provide financial material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons…determined to be subject to [that] order." Exec. Order No. 13224, § 1(d)(i). All assets subject to U.S. jurisdiction in which persons designated under E.O. 13224 have an interest are blocked (or "frozen"), and U.S. persons are generally prohibited from engaging in any transactions with them. *Id.* at §§ 1 and 2.

### C.       Global Terrorism Sanctions Regulations

On June 6, 2003, OFAC issued the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. Part 594, to implement E.O. 13224. *See* 68 Fed. Reg. 34,196. The GTSR prohibits, *inter alia*, all transactions that are prohibited by E.O. 13224. 31 C.F.R. § 594.201. The names of persons designated pursuant to E.O. 13224 are incorporated into OFAC's list of Specially Designated

Nationals and Blocked Persons ("SDN List") with the identifying program tag "[SDGT]." 31 C.F.R. § 594.201, n.2. The GTSR also delegate to the Director of OFAC any action that the Secretary of the Treasury is authorized to take under E.O. 13224 or any Executive orders relating to the national emergency declared therein. 31 C.F.R. § 594.802.

The GTSR refers to the Reporting, Procedures and Penalties Regulations of OFAC, 31 C.F.R. Part 501, for administrative decisions, rulemaking, and requests for documents pursuant to the Freedom of Information Act ("FOIA") and Privacy Act (5 U.S.C. §§ 552 and 552a). 31 C.F.R. § 594.801. Accordingly, pursuant to 31 C.F.R. § 501.807—OFAC's procedures governing delisting from the SDN List—an SDGT may "seek administrative reconsideration" of a designation, or may "assert that the circumstances resulting in the designation no longer apply." 31 C.F.R. §§ 594.801 & 501.807. In doing so, the SDGT may submit arguments or evidence establishing that an insufficient basis exists for the designation, and may also "propose remedial steps…which the person believes would negate the basis for designation." 31 C.F.R. § 501.807.

### D.      Hizballah International Financing Prevention Act of 2015

The Hizballah International Financing Prevention Act of 2015 ("HIFPA") authorized the President to prescribe regulations to prohibit, or impose strict conditions on, the opening or maintaining in the United States of a correspondent account or a payable-through account by certain foreign financial institutions determined to have: (A) knowingly facilitated a significant transaction or transactions for Hizballah; (B) knowingly facilitated a significant transaction or transactions of a person identified on the SDN List for acting for or on behalf of or at the direction of, or being owned or controlled by, Hizballah; (C) knowingly engaged in money laundering to carry out either of the foregoing activities; or (D) knowingly facilitated a significant transaction or transactions or provide significant financial services to carry out any of the foregoing activities.

*See* Hizballah International Financing Prevention Act of 2015, Pub. L. No. 114-102, 129 Stat. 2205, 2206-2207 (2015).

### E.     Hizballah Financial Sanctions Regulations

On April 15, 2016, OFAC issued the Hizballah Financial Sanctions Regulations ("HFSR"), 31 C.F.R. Part 566 to implement HIFPA. *See* 81 Fed. Reg. 22,185. The HFSR authorizes the imposition of strict conditions on the opening or maintaining of a correspondent accounts or payable-through accounts in the United States for foreign financial institutions determined to engage in the activities identified by HIFPA. 31 C.F.R. § 566.201(a). Those strict conditions include: (1) prohibiting or restricting the provision of trade finance through the correspondent account or payable-through account of the foreign financial institution; (2) restricting the transactions that may be processed through the correspondent account or payable through account of the foreign financial institution to certain types of transactions, such as personal remittances; (3) placing monetary limits on, or limiting the volume of, the transactions that may be processed through the correspondent account or payable-through account of the foreign financial institution; (4) requiring pre-approval from the U.S. financial institution for all transactions processed through the correspondent account or payable-through account of the foreign financial institution; or (5) prohibiting or restricting the processing of foreign exchange transactions through the correspondent account or payable-through account of the foreign financial institution. 31 C.F.R. § 566.201(b).

Persons that appear on the SDN List for acting on behalf of, or at the direction of, or being owned or controlled by Hizballah have the following descriptive text in their SDN List entry: ["Subject to secondary sanctions pursuant to the Hizballah Financial Sanctions Regulations"].

NOTE to 31 C.F.R. § 566.201(a)(2). The HFSR authorizes the Director of OFAC to take any action the Secretary of the Treasury is authorized to take pursuant to HIFPA. 31 C.F.R. § 566.802.

## II.   STATEMENT OF FACTS

### A.   Bazzi's Designation by OFAC

On May 17, 2018, OFAC designated Bazzi pursuant to E.O. 13224 for allegedly "assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah." A.R. 0002-0010. As a result of that designation action, Bazzi is identified on SDN List with the SDGT identifier and the descriptive text ["Subject to secondary sanctions pursuant to the Hizballah Financial Sanctions Regulations"].

Due to OFAC's designation, any assets subject to U.S. jurisdiction in which Bazzi maintains an interest are blocked, including any entities owned 50 percent or more by him. 31 C.F.R. § 594.201; *See also* U.S. Dept. of the Treasury, *Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked*, Aug. 13, 2014. In addition, U.S. persons are generally prohibited from dealing with either Bazzi or companies he owns 50 percent or more. *Id*. Furthermore, as Bazzi is identified on the SDN List with the ["Subject to secondary sanctions pursuant to the Hizballah Financial Sanctions Regulations"] identifier, foreign financial institutions will not engage in any transactions with him or his companies, lest they be exposed to any of the strict conditions of the HFSR. 31 C.F.R. § 566.201; *See also* A.R. 0020, Note 4. In sum, as a direct result of Defendants' actions, Bazzi is effectively barred from the global financial system.

### B.   OFAC's Disclosure of the Administrative Record

On April 19, 2019, Bazzi filed a lawsuit challenging his designation under E.O. 13224. Complaint for Declaratory and Injunctive Relief, ECF No. 1 (Feb. 26, 2019). Following that filing,

Defendants provided Bazzi with a redacted version of the administrative record relied upon to designate him under that authority. That record included an evidentiary memorandum which provided the purported factual and legal bases underlying OFAC's decision to designate him, and an unclassified summary of the information redacted from the disclosed record. A.R. 0001 and 0017-0029.

Section III of the evidentiary memorandum is titled "Basis for Determination." A.R. 0020-0022. That section sets forth OFAC's conclusions and findings for its determination that Bazzi "assists in, sponsors, or provides financial, material, or technological support for, or financial or other services to or in support of [Hizballah]." *Id*. All of OFAC's factual support for this legal determination—consisting of nine paragraphs and corresponding exhibits—is redacted. *Id.* Accompanying the redacted record was an unclassified summary of the information redacted from the record which consisted of six brief paragraphs. A.R. 0001.

The unclassified summary substantively mirrored the conclusory allegations contained in the administrative record. For example, the summary states that Bazzi:

"is a [Hizballah] financier who has provided [Hizballah] with financial assistance for many years. Bazzi operates in Belgium, Lebanon, and several countries in West Africa. Bazzi is a key financier who has provided millions of dollars to [Hizballah] generated from his business activities. Mohammad Ibrahim Bazzi maintains *direct* ties to Hizballah financiers previously designated by the U.S. Government, such as Ali Youssef Charara and Adham Husayn Tabaja."

A.R. 0001 (emphasis added). The only portion of this allegation not appearing in the press release was that the purported ties between Bazzi and Hizballah financiers are of a "direct" nature.

Likewise, the unclassified summary also alleges that "[i]n 2010, Bazzi and Hizballah representative to Iran, 'Abdallah Safi-al-Din, together were *involved in delivering cash to Iran* and expanding banking services between Lebanon and Iran." *Id.* (emphasis added). The only additional information provided regarding that allegation—beyond that found in the press release—was that Bazzi was also alleged to have been involved with Safi-al-Din in delivering cash to Iran. Further paralleling the press release, the unclassified summary alleges that, "[i]n 2015, Bazzi and Adham Tabaja, a Hizballah insider, collaborated on financial transactions." *Id.* The only new information regarding this allegation in the summary was that the alleged collaboration occurred sometime in 2015.

The remainder of the unclassified summary had three conclusory allegations that had not appeared in the press release. First, that "[a]s of early 2017, Bazzi facilitated the relationship between designated narcotics trafficker Ali Kharroubi and Hizballah member and businessperson Ali Sharara." *Id.* Second, that "[a]s of early 2017, Bazzi and Ali Sharara utilized The Gambia to transfer funds to Hizballah. *Id.* Finally, that "Sharara and Bazzi operated several joint businesses in The Gambia, including Spectrum investment Group S.A.L. Holding and Euro Africa Group." *Id.*

The evidentiary memorandum's Additional Information section—A.R. 0022-0024—also contained certain allegations that are separate from OFAC's Basis for Determination section, and thus not relied upon to designate Bazzi under E.O. 13224 for alleged dealings with Hizballah.

## C.    Bazzi's Amended Complaint

Following Defendants' disclosure of the redacted administrative record, Bazzi amended his complaint on July 12, 2019. Am. Compl., ECF No. 9. The Amended Complaint solely challenges the adequacy of notice provided to Bazzi in support of OFAC's determination to

designate him under E.O. 13224. *Id.* at ¶¶ 26-36. It does not challenge the substance of OFAC's designation action, as Bazzi intends to challenge his designation through OFAC's administrative reconsideration process. In order to have a meaningful opportunity to do so, Bazzi has continued this lawsuit solely to challenge the adequacy of the notice provided.

The Amended Complaint seeks declaratory relief from this Court, including by ordering Defendants to disclose all of the reasons for Bazzi's designation under E.O. 13224 to the fullest extent required under the Constitution and the APA. Am. Compl., Relief Requested, ECF No. 9.

## STANDARD OF REVIEW

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is 'genuine' only if a reasonable fact-finder could find for the nonmoving party, and a fact is 'material' only if it is capable of affecting the outcome of the litigation." *King & Spalding LLP v. U.S. Dep't of Health and Hum. Servs.*, 330 F. Supp. 3d 477, 487 (D.D.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Granting summary judgment is appropriate if "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citing *Carter v. George Washington U.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

When a court reviews agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency

action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012).

## DISCUSSION

**I. BAZZI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE DEFENDANTS FAILED TO PROVIDE BAZZI WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 AND ACTED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

Contrary to Defendants' assertions, the disclosed unclassified summary fails to provide Bazzi with sufficient reasons as to the basis of his designation under E.O. 13224. By failing to provide Bazzi with sufficient reasons for his designation, Defendants have violated the Fifth Amendment Due Process Clause. Accordingly, Bazzi respectfully requests that the Court grant summary judgment as to Count I. In doing so, Bazzi also requests an order directing Defendants either to disclose the redacted portions of the administrative record or to provide alternative means by which Bazzi can understand the factual bases for his designation, so that he can have a meaningful opportunity to respond to OFAC's designation.

### A. Bazzi Can Assert a Fifth Amendment Due Process Claim

Defendants challenge Bazzi's ability to assert a constitutional claim to due process, arguing that he "fails to show any entitlement to due process" and does not provide any authority to support his claims of constitutional protections. Def's. Mot. at 12, ECF No. 10. Defendants' contention, however, stems from their misplaced reliance on *United States v. Verdugo-Urquidez,* 494 U.S. 259 (1990) and *Jifry v. F.A.A*, 370 F.3d 1174 (D.C. Cir. 2004). Specifically, Defendants fail to recognize that the Supreme Court in *Verdugo-Urquidez* did not establish a bright-line rule under which foreign persons do or do not merit the protections of the Fifth Amendment. *Verdugo-Urquidez,* 494 U.S. at 270. Rather, following an examination of cases in which the Court had

10

previously held that aliens enjoy certain constitutional rights, the Court identified certain exceptions that may arise in which aliens may be accorded protections under the Constitution. *Id.*; *United States v. Davis,* 905 F.2d 254, 251 (9th Cir. 1990) ("*Verdugo-Urquidez* only held that the fourth amendment does not apply to searches and seizures of nonresident aliens in foreign countries…"); *Herandez v. United States*, 757 F.3d 249, 268 (5th Cir. 2014) (concluding based on a comparison of the Fourth and Fifth Amendments that "*Verdugo-Urquidez's* sufficient connections test…does not apply in interpreting the extraterritorial application of the Fifth Amendment"). Furthermore, *Jifry* "concern[ed] alien pilots only" who had their airman certificates—*i.e.* their ability to operate flights to the United States—revoked by the Federal Aviation Administration following a determination that they presented risks to aviation or national security. 370 F.3d at 1177. The court in *Jifry* held that it "need not decide whether or not [plaintiffs] are entitled to constitutional protections because, even assuming that they are, they have received all the process that they are due under our precedent." *Id.* at 1182-83.

The application of the Due Process Clause to foreign persons is not subject to a "bright-line rule" and remains case-specific, as demonstrated by litigation regarding the Constitution's procedural protections for Guantanamo Bay detainees in the adjudication of their habeas petitions. *See e.g.*, *Qassim v. Trump*, 927 F.3d 522 (D.C. Cir. 2019) ("Circuit precedent leaves open and unresolved the question of what constitutional procedural protections apply to the adjudication of detainee habeas corpus petitions…."); *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009), *vacated*, 559 U.S. 131, *and judgment reinstated as amended*, 605 F.3d 1046 (D.C. Cir. 2010); *Boumediene v. Bush*, 553 U.S. 723 (2008). Further, the Supreme Court has rejected the Government's attempts to argue that physical location outside of the United States prevents the

assertion of certain rights—e.g., Habeas Corpus—finding that "questions of extraterritoriality turn on objective factors and practical concerns, not formalism." *Boumediene*, 553 U.S. at 732, 764.

Similarly, Defendants attempt to liken the D.C. Circuit's discussion of the "substantial connections" issue in challenges to the Secretary of State's designation of a Foreign Terrorist Organization ("FTO") to Bazzi's posture as a non-resident alien is also misplaced.  Defs. Mot. at 11-12, ECF No. 10. This is because the cited cases specifically disclaimed any definitive ruling on what constitutes "substantial connections" for a foreign person subject to U.S. economic sanctions to be accorded constitutional protections. *See National Council of Resistance v. Dep't. of St. ("NCORI"),* 251 F.3d at 202 ("In any event, we are not undertaking to determine, as a general matter, how 'substantial' an alien's connections with this country must be to merit the protections of the Due Process Clause or any other part of the Constitution"). In sum, courts have not decided the extent to which a foreign person sanctioned by OFAC must have contacts with the United States in order to claim due process protections, nor ruled on any specific standard. *See Kadi,* 42 F. Supp. at 25 ("The D.C. Circuit has not explicitly addressed what criteria the Court should apply in considering whether a foreign national residing outside the United States can satisfy the "substantial connection: test to raise rights under the U.S. Constitution related to the blocking or freezing of his assets. Nor has the D.C. Circuit addressed whether such rights turn on the presence of property in the United States, or whether [Plaintiff] can raise certain constitutional claims, but not others").

In the instant matter—differing from the legal consequences most designated persons are subjected to—Bazzi's designation under the HFSR exposes foreign financial institutions to sanctions for dealing with him. *See* A.R. 0020 at Note 4. As a direct result, this extraterritorial consequence has caused Bazzi's personal and business financial accounts in various countries,

including his home country of Lebanon, to be "frozen" or closed. Defendants have failed to cite any authority holding that a foreign national who has been barred from all financial institutions worldwide as result of a U.S. legal action may not be extended Fifth Amendment Due Process protections. Thus, the consequences of Bazzi's designation alone support a due process claim.

Furthermore, Bazzi has voluntarily travelled to the United States on an alien parole visa— File No. A202 119 633—that was issued to him by the U.S. Government on or about February 18, 2015. Therefore, contrary to Defendants' suggestions, Bazzi has previously had a physical presence in the United States. Courts have held in view of the *Verduro-Urquidez* "substantial contacts" consideration that a temporary voluntary visit to the United States qualifies as such a contact. *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006) (citing *U.S. v. Tehrani*, 826 F. Supp. 789, 793 n.1 (D. Vt. 1993) "holding that defendants voluntarily gaining admission to the United States for a temporary visit as tourists qualified as "substantial connections"); *Contra In Re Iraq Afg. Detainees Litig.,* 479 F. Supp. 2d 85, 98 (D.D.C. 2007) (Although the plaintiff in *Verdugo-Urquidez* was held in the United States against his will, the Supreme Court stated that "this sort of presence—lawful but involuntary—is not the sort to indicate any substantial connection with our country."); *See also 32 Cty. Sovereignty Committee v. Dep't. of St.*, 292 F.3d 797, 799 (D.C. Cir. 2002) (holding that "presence in this country" is sufficient for the due process clause").

Therefore, even under the "substantial connections" consideration set forth in *Verduro-Urquidez,* Bazzi has shown a colorable claim to constitutional due process even though he may not have any physical property in the United States. *See Kadi,* 42 F. Supp. 3d 1, 26 ("We have no idea of the truth of the allegation but for the present purposes, the colorable allegation would seem enough to support their due process claims"); *See also FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d

299, 327 (D.D.C. 2016) ("[t]he caselaw is surprisingly sparse on what quantum of U.S. contacts are sufficient to establish general purpose due process under *Verdugo-Urquidez*").

      **B.**      **Defendants Violated the Constitution's Post-Deprivation Due Process Requirement of Notice and a Hearing by Failing to Provide Adequate Notice to Bazzi as to Their Decision to Designate Him Under E.O. 13224**

"Constitutionally sufficient notice should give the party an understanding of the allegations against it so that it has the opportunity to make a meaningful response. The party must be able to know the conduct on which the government bases its action, so that it can explain its conduct or otherwise respond to the allegations. It must also have reasonable access to the evidence that the government is using against them." *KindHearts for Charitable Humanitarian. Dev. v. Geithner*, 647 F. Supp. 2d 857, 901 (N.D. Ohio 2009) (referring to *Gete v. I.N.S.*, 121 F.3d 1285, 1297-98 (9th Cir. 1997); *See also Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). These same standards have been applied in cases where foreign nationals have challenged their designations by OFAC. *See Fares v. Smith*, 901 F.3d 315, 323 (D.C. Cir. 2018) (noting that "[t]o determine whether OFAC's designation of a plaintiff provides constitutionally adequate notice—enabling him meaningfully to avail himself of his opportunity to be heard—courts weigh [the] three factors under the familiar *Mathews v. Eldridge* balancing test....").

Defendants cite *Zevallos* to suggest that where pre-deprivation notice is not required, OFAC must only provide Bazzi with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence in response…." Def's. Mot. at 17, ECF No. 10. However, the court's reasoning in *Zevallos* contrasted the specific facts of that case with the facts before the courts in *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner* and *Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*.  In those cases, the respective courts were troubled by the fact that the designated plaintiffs were "left in the dark as to the reasons for

their designations, and therefore could not meaningfully refute the evidence against them." *Id.* Simply put, courts have not found just "a basis" to be sufficient where it offers no opportunity to make a meaningful response.

Defendants also refer to the D.C. District Court's decision in *Fares* to claim that Bazzi has similarly "been apprised…of the government's view regarding the basis for [his] designation[]…." Def's. Mot. at 15, ECF No. 10; *See also Fares v. Smith*, 249 F. Supp. 3d 115, 127 (D.D.C. 2017). That court referred to the same comparison made in *Zevallos* between *KindHearts* and *Al Haramain*, and found that unlike the plaintiffs in *Al Haramain* and *KindHearts*, who were left in the dark as to the reasons for their designations, the plaintiffs in *Fares* had been apprised of the Government's view regarding the basis for their designations—primarily via a three-page "October Summary" of privileged information. *Fares*, 249 F. Supp. 3d at 127 (D.D.C. 2017) (citing *Zevallos*, 10 F. Supp. 3d at 131) (internal citations omitted). Accordingly, the court held that the plaintiffs in *Fares* could meaningfully proffer rebuttal evidence and arguments to OFAC to contest their designations. *Fares*, 249 F. Supp. 3d at 127 (citing *Zevallos*, 10 F. Supp. 3d at 131) (internal citations omitted).

Defendants further maintain that in the designation context, the D.C. Circuit has held that "due process require[s] the disclosure of only the unclassified portions of the administrative record." *Holy Land Foundation v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003); *See* Def's. Mot. at 16, ECF No. 10. In *Holy Land*, however, the plaintiffs never raised the specific issue of whether a statement of reasons is required by due process, and courts have since reasoned that the notice given in *Holy Land* had sufficiently disclosed the reasons for OFAC's investigation. *See Al Haramain Islamic Found., Inc.*, 686 F.3d at 987 (*assessing Holy Land*, 333 F.3d at 164). Thus, the requirements of due process are not defined by the names or titles given by the Government to

documents it chooses to disclose to a designated party, but instead depend on the specific circumstances of a given situation. *Fares*, 249 F. Supp. at 122, *aff. Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) ("Due process is flexible and calls for such procedural as the particular situation demands").

In the OFAC designation context, the D.C. Circuit has reasoned that an administrative decision critically relying on undisclosed classified material would not necessarily comport with due process, especially where a classified record is essential to upholding the action. *Fares,* 249 F. Supp. 3d at 123 *(citing People's Mojahedin Org. of Iran v. U.S. Dep't of State,* 613 F.3d 220, 231 (D.C. Cir. 2010)). Furthermore, agency disclosure of some but not all of the allegations against designated parties "…impairs their ability to fully clear their names for delisting, leaving them 'stumbl[ing] towards a moving target.'" *Fares v. Smith*, 901 F.3d at 322 (citing *Zevallos*, 793 F.3d at 118). For example, courts have held that OFAC's disclosure of "only one of three reasons for its investigation and designation rendered the notice incomplete such that it did not meet the requirements of due process." *Id.* (referring to *Al Haramain*, 686 F.3d at 986) (internal citations omitted); *See also KindHearts for Charitable Humanitarian Dev*., 647 F. Supp. 2d at 903 (holding OFAC's disclosure of a letter informing KindHearts of the agency's decision, the thirty-five unclassified, non-privileged exhibits, and a redacted version of the provisional determination evidentiary memorandum to be inadequate notice because they left KindHearts "largely uninformed about the basis for the government's actions"). In short, both the D.C. Circuit and other courts have required designated parties to have "the opportunity to present…such evidence as those [persons] may be able to produce to rebut the administrative record or otherwise negate the proposition" supporting the Government's designation. *Fares*, 901 F.3d at 322 (citing *NCORI*, 251 F.3d 192, 209 (D.C. Cir. 2001)).

Courts have further held that the Government's reliance on undisclosed classified evidence "is presumptively unconstitutional subject to government's overcoming the presumption in the most extraordinary circumstances." *Al Haramain*, 686 F.3d at 981. Moreover, the burden is on the Government to provide specific facts or information in support of its refusal to provide the classified or otherwise privileged information that a plaintiff seeks. *See In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 158 (D.D.C. 2017) ("the Government bears the burden of proving each element of the privilege it asserts") (referring to *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)); *See also Sulemane v. Mnuchin*, Civil Action No. 16-1822 (TJK), 2019 WL 77428 (D.D.C. Jan. 2, 2019).[1] Even in the Freedom of Information Act ("FOIA") context, for the Government's claim of any of the nine exemptions in 5 U.S.C. § 552(b)—including classified or law enforcement exemptions—it "bears the burden of demonstrating that any withheld information falls within the claimed exemptions." *Willis v. Nat'l Sec. Agency*, No. 17-cv-2038 (KBJ), 2019 WL 1924249 (D.D.C. Apr. 30, 2019) (referring to *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000).[2]

---

[1] Defendants' Note 11 to their Motion for Summary Judgment states that Bazzi apparently seeks a privilege log, in view of Am. Compl. Prayer for Relief ¶ C. Defs. Mot. at 17, Note 11 (Dkt. 10). Bazzi is not necessarily requesting a "privilege log." However, to the extent this Court finds that Defendants have not proven to the Court's satisfaction that the classified or otherwise privileged evidence relied upon to designate Bazzi rightfully falls within the scope of those exemptions for disclosure, a privilege log may be appropriate.

[2] Defendants' Note 8 to their Motion for Summary Judgment states that Defendants have previously explained to Bazzi that certain information that is redacted but marked unclassified is otherwise classified by compilation, given its context in Bazzi's evidentiary memorandum. Defs. Mot. at 13, Note 8 (Dkt. 10). Information that may be classified by compilation, however, does not shift the Government's burden to present specific information to the Court *ex parte* or *in camera* to "support its contention that providing the information sought by plaintiffs would result in the disclosure of classified information." *Turkmen v. Ashcroft*, 02-CV-2307 (JG), 04-CV-1809 (JG), 2006 WL 1517743 at *7 (E.D.N.Y. May 30, 2006). Defendants may support such a contention by means of affidavits to this Court. *Carter v. Nat'l Sec. Agency*, 962 F. Supp. 2d 130, 140 (D.D.C. 2013) (citing *Phillippi v. C.I.A.*, 546 F.2d 1009, 1013 (D.C. Cir. 1976).

Furthermore, Bazzi is not insisting that the only possible relief is the full unredacted administrative record. *See* Def's. Mot. at 15-16, ECF No. 10; *See also Fares*, 901 F.3d at 323 (holding that "Plaintiffs' all-or-nothing argument fails"). Rather, Bazzi is seeking disclosures in line with the D.C. Circuit's ruling that reliance on undisclosed classified evidence is permissible "only in the most extraordinary circumstances and strongly disfavored." *Fares*, 901 F.3d at 324 (internal citations omitted); *See also Rafeedie v. I.N.S.,* 880 F.2d 506, 516 (D.C. Cir. 1989). As the D.C. Circuit clearly noted, judges are "necessarily wary of one-sided process because there is an exceptionally high risk of erroneous deprivation when undisclosed information is used." *Fares*, 901 F.3d at 324 (citing *American-Arab Anti-Discrimination v. Reno,* 70 F.3d 1045, 1069 (9th Cir. 1995) (internal citations omitted)). As a result, the D.C. Circuit has countenanced the use of undisclosed classified evidence in the OFAC designation context only where there is no alternative means of disclosure. *See Fares*, 901 F.3d at 324; *NCORI,* 251 F.3d at 208; *People's Mojahedin Org. v. Department of St.,* 327 F. 3d 1238, 1242 (D.C. Cir. 2003); *Holy Land*, 333 F.3d at 164.

Naturally, at this juncture, Bazzi cannot review the classified or otherwise privileged information that Defendants have critically relied upon to designate him in order to argue whether his case is an isolated one where Defendants' reliance on undisclosed classified evidence is permissible. Thus, consistent with the relief request in his Amended Complaint, Bazzi respectfully requests that this Court make that determination through an *ex parte* and *in camera* review, in accordance with 50 U.S.C. § 1702(c). *See* Am. Compl. Prayer for Relief ¶ A-C, ECF No. 9.

If the Court were to be truly satisfied that the withheld information cannot be disclosed due to national security concerns, the D.C. Circuit has held that even in such a "narrow category of cases, other procedural safeguards suffice[] to provide meaningful protections of due process interests…and prevent government overreach." *See Fares*, 901 F.3d at 319, 324. These procedural

safeguards require the Government to disclose to designated parties "sufficiently specific 'unclassified summaries'" that provide the "'who,' 'what,' 'when,' and 'where' of the allegations.'" *Id.* at 324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)); *See also Al Haramain*, 686 F.3d at 982-983 (finding other means for the Government to provide information that does not implicate national security, including unclassified summaries and/or for lawyers with the appropriate security clearance to view the classified material). Ultimately, OFAC must "defend[] its failure to provide such alternative disclosure measures." *Al Haramain*, 686 F.3d at 983. Defendants' Motion for Summary Judgment, however, largely ignores this jurisprudence, instead selectively choosing portions of the relevant case law to defend the limited disclosures it has already made to Bazzi.

Although the information disclosed by Defendants arguably summarizes the 'who' relevant to its allegations—*e.g.*, Sharara, Tabaja, Kharroubi—it fails to provide the 'what,' 'when,' and 'where' of the allegations underlying its determination. Defendants argue that their disclosures identify the alleged conduct—or the 'what'—supporting their determination, including that Bazzi "has provided Hizballah financial assistance for many years," by providing an amount for such support, as well as the source of funding—*i.e.* "millions of dollars…generated from his business activities." Def's. Mot. at 13, ECF No. 10; A.R. 0001 and 0004. These allegations do not, however, adequately identify those activities, as stating that Bazzi is a Hizballah financier who provides Hizballah with financial assistance merely characterizes what he is alleged to have done, rather than identify what activities occurred to justify that characterization. Being left with nothing more than a characterization of those activities, as opposed to the activities themselves, prevents Bazzi from meaningfully rebutting the allegations against him with something more than a general denial. In other words, Defendants simply assume the truth of their conclusions, instead of

supporting them.  Def's. Mot. at 14-15, ECF No. 10. Furthermore, "millions of dollars" is not an "amount," as Defendants attempt to suggest, nor is Bazzi's "business activities" an identification of the alleged source of funding. Without further details, Bazzi is left wondering what activities does OFAC believe he engaged in that provided Hizballah with financial assistance, which of his businesses are at issue, when did the events occur, where did they occur, and how did he fund them.

Despite Defendants' claims to the contrary, OFAC's unclassified summary does not provide these "'who,' 'what,' 'when,' and 'where'" details. Specifically, Defendants claim that the unclassified summary provides additional detail about Bazzi's associates, but again the summary only provides the following conclusory allegations: 1) that as of early 2017, Bazzi facilitated the relationship between designated narcotics trafficker Kharroubi and Hizballah member and businessperson Sharara; 2) that as of early 2017, Bazzi and Sharara utilized The Gambia to transfer funds to Hizballah; and that 3) Sharara and Bazzi operated several joint business in The Gambia, including Spectrum Investment Group. S.A.L. Holding and Euro Africa Group. While the summary may provide the 'who' in these allegations, and give a timeframe as to 'when' the alleged conduct occurred for the first two, OFAC provides no other specifics in support of these allegations. For example, how did Bazzi allegedly facilitate a relationship between Kharroubi and Sharara, how does one "use The Gambia" to transfer money, when did Sharara and Bazzi operate these companies together, all are questions for which answers will be needed if Bazzi is to meaningfully rebut his designation.

Contrary to Defendants' assertions, the limited disclosures OFAC has made do not provide Bazzi with a clear path to "seek administrative reconsideration" of the designation or "assert that the circumstances resulting in the designation no longer apply." Def's. Mot. at 14, ECF No. 10. At

this point, Bazzi could only provide blanket denials to OFAC during the administrative reconsideration process, as the agency has not provided any information on how it arrived at its conclusions. *KindHearts for Charitable Humanitarian. Dev.*, 647 F. Supp. 2d at 903 n.25 ("To the extent that OFAC contends, or might contend, that KindHearts knew itself what it was doing, where its funds were going and the unlawfulness of their destination, such response on its part is unavailing. Notice is to come from the government because it alone knows what it believes, and why what it believes justifies its actions").

Defendants suggestion that Bazzi submit to an "independent audit"—as was noted in *Fares v. Smith*—is unwarranted when he is still "for want of opportunities to present evidence to rebut those allegations [against him]." *Fares,* 249 F. Supp. 3d at 128. First, in *Fares,* the plaintiffs had been provided with four pages of unclassified summaries of otherwise privileged information from the redacted administrative record underlying their designation. *Id.* Second, in the instant matter Defendants have not indicated which of Bazzi's businesses are alleged to have been used to support their allegation that Bazzi has provided "financial assistance" to Hizballah for "many years." In *Fares*, however, a Panamanian multi-national parent corporation—Grupo Wisa, S.A.—was alleged to be the center of the alleged money laundering organization.

Finally, Defendants' suggestion of an "independent audit" in order to dispute Bazzi's alleged ties with Hizballah financiers Tabaja and Sharara is unavailing. Bazzi is unable to dispute his alleged ties to either individual, again, because there are no specifics provided as to the purported transfer of funds he is alleged to have engaged in with Sharara, or the financial transactions Bazzi purportedly collaborated on with Tabaja. Without more specifics as to Bazzi's alleged sanctionable activity, Defendants' invitation for Bazzi to submit an independent audit in

any administrative reconsideration is an empty gesture, as he remains without notice as to which businesses and/or business lines to have audited.

Furthermore, Defendants attempt to draw parallels with the court's reasoning in *Joumaa v. Mnuchin* is also misplaced. Def's. Mot. at 15, ECF No. 10. In *Joumaa*, OFAC had provided the plaintiff a three-page letter denying his petition, a summary of the privileged and classified information, and the evidentiary memorandum. *See Joumaa v. Mnuchin,* No. 17-2780 (TJK), 2019 WL 1559453 *20 (D.D.C. Apr. 10, 2019). According to the court, those disclosures provided Joumaa with specifics about his alleged money laundering activities; the entities, amounts of money, types of narcotics, time frames, locations allegedly involved, and his alleged associations with other designated parties. *Id*. The court in that case reasoned that such disclosed unclassified evidence was not "too conclusory." *Id*. Although Defendants have disclosed certain alleged associates of Bazzi, they have not specified the "time frames, and locations" where the financial assistance to Hizballah occurred, other than suggesting it happened for "many years," and listing certain countries in which Bazzi operated his businesses.

For the foregoing reasons, the Court should order Defendants to remedy the inadequate notice they have provided to Bazzi.

## II. BAZZI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II BECAUSE DEFENDANTS FAILED TO PROVIDE HIM WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT'S NOTICE REQUIREMENT

Courts in this Circuit have routinely held that the traditional concepts of due process are incorporated into administrative law. *Howmet Corp. v. E.P.A.*, 614 F.3d 544, 553 (D.C. Cir. 2010) (citing to *Satellite Broadcasting Co., Inc. v. F.C.C.*, 824 F.2d 1, 3 (D.C. Cir. 1987)); *See also Hill v. U.S. Parole Comm'n*, No. 16-1476 (JEB), 2017 WL 2414446 *13 (D.D.C. June 2, 2017) (referring to *General Elec. Co. v. E.P.A.*, 53 F.3d 1324, 1328 (D.C. Cir. 1995) "[b]oth due process

*and* administrative law require that a person receive fair notice before certain hearings are held" (emphasis added)).

In *Al-Haramain,* the plaintiff had challenged OFAC's lack of procedural safeguards and regulations for the designation process under the APA by arguing that it was arbitrary and capricious because none of the regulations identify any procedural or substantive criteria to guide the process. *KindHearts for Charitable Human. Devel.*, 647 F. Supp. 2d at 898 (citing *Al Haramain Islamic Foundation, Inc.*, 585 F. Supp. 2d at 1253). In response, the court in *Al-Haramain* held that in the absence of those agency regulations, the requirements of due process apply. *Id.* (citing *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 919 (9th Cir. 1995)). This mandate also supports administrative procedures which allow interested persons to appear before an agency to seek a "determination of an issue, request, or controversy in a proceeding…." 5 U.S.C. § 555(b).

OFAC implements the procedural requirements of 5 U.S.C. § 555(b) through its delisting procedures, which allow persons to pursue administrative reconsideration of their designations or assert that the circumstances giving rise to their designations are no longer applicable. 31 C.F.R. § 501.807. Under these procedures, designated persons are expressly permitted to provide evidence or arguments that they believe establish that there is an insufficient basis for the designation or propose remedial steps which they believe would negate the basis for designation. 31 C.F.R. § 501.807(a). These procedures presume that designated persons have an understanding of the reasons for their designation, and are thus in a position to offer evidence believed to rebut OFAC's allegations or propose remedial steps that would negate the factual basis for that designation. As detailed above, however, courts examining OFAC's procedures have held that "[n]otice is to come from the government because it alone knows what it believes, and why what it believes justifies its actions." *KindHearts for Charitable Human. Devel.*, 647 F. Supp. 2d at 903 n.25.

Additionally, Defendants have cited *Sulemane v. Mnuchin* in asserting that Bazzi is not entitled to classified or otherwise protected portions of the administrative record. Def's. Mot. at 17, ECF No. 10. While the court in *Sulemane* held that § 555(e) of the APA "does not require OFAC to provide Sulemane the classified or law enforcement-privileged information supporting th[e] grounds" for his designation, its reasoning was in the context of an administrative proceeding before the agency. *Sulemane v. Mnuchin*, No. 16-1822 (TJK), 2019 WL 77428 *14-16 (D.D.C. Jan. 2, 2019). Unlike *Sulemane*, however, Bazzi has not had any petition denied by OFAC, and thus § 555(e) of the APA is not implicated. Rather, Bazzi is challenging the adequacy of notice under the broader due process requirements imposed on OFAC under the APA. *Id.* at 16.

As the APA mandates that in the absence of OFAC's procedural or substantive criteria to guide its designation process, the requirements of due process apply for Bazzi, regardless of whether he is separately entitled to them under the Fifth Amendment's Due Process Clause. Defendants concede that the APA requires them to provide the administrative record underlying the designation of Bazzi, however, they contend that OFAC only need disclose the unclassified portions of that record. Def's. Mot. at 16, ECF No. 10. For the same reasons noted above, however, the unclassified portion disclosed here is insufficient to satisfy the APA's requirements. Accordingly, the Court should order Defendants to remedy the inadequate notice they have provided to Bazzi, as their disclosures thus far are in violation of the APA's notice requirement and have caused Defendants to act arbitrarily and capriciously and without observance of procedure required by law. 5 U.S.C. §§ 706(2)(A) and 706(2)(D).

III.   **BAZZI IS CHALLENGING THE SUBSTANCE OF OFAC'S DECISION TO DESIGNATE HIM THROUGH ITS ADMINISTRATIVE RECONSIDERATION PROCESS, AND OFAC'S ASSERTION THAT AMPLE EVIDENCE IN THE CLASSIFIED RECORD SUPPORTS HIS DESIGNATION MAKES CLEAR THAT DEFENDANTS VIOLATED HIS RIGHTS TO DUE PROCESS UNDER THE CONSTITUTION AND THE APA AND INTEND TO CONTINUE TO DO SO**

As noted throughout this Memorandum, Bazzi is not challenging OFAC's designation determination in this litigation, but solely the insufficient notice he has received in violation of the Constitution and the APA.   However, Bazzi does not, as Defendants suggest, concede the allegation that he is a "key Hizballah financier, an associate of the designated individuals who OFAC identified, or a participant in the activities that OFAC described."   Def's. Mot. at 17-18, ECF No. 10. As Bazzi is only challenging the notice provided to him, the dismissal of Counts I and II of the Amended Complaint is unwarranted, as the plaintiffs in *Al Haramain*—the case Defendants' cite in support of their argument for dismissal—were also challenging their designations in that case. *Al Haramain Islamic Found., Inc.*, 686 F.3d at 990. Therefore, the reasoning cited from that case by Defendants—or the rule of prejudicial error in 5 U.S.C. § 706— regarding the harmlessness of any procedural due process violations, is inapposite.

Further, Defendants assert that the "unclassified administrative record makes clear—and the Court's *ex parte*, *in camera* review of the classified record will confirm—ample evidence supports Bazzi's designation." Def's. Mot. at 17, ECF No. 10. Defendants, however, also concede that the harmlessness of any error with the notice that Bazzi already received "would not have changed OFAC's ultimate designation determination." *Id.* at 18 (citing to *Al Haramain Islamic Found., Inc.*, 686 F.3d at 990). This concession by Defendants, in fact, confirms the inadequacy of the notice Bazzi has received, as they acknowledge that they are critically relying on undisclosed classified material, and such reliance does not necessarily comport with due process where a

classified record is essential to upholding the action. *Fares,* 249 F. Supp. 3d at 123 *(citing People's Mojahedin Org. v. U.S. Dep't of State,* 613 F.3d at 231); *Zevallos*, 793 F.3d at 118.

The Court should therefore enter judgment in favor of all of Bazzi's claims and deny Defendants Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Summary Judgment; grant Bazzi's Motion for Summary Judgment; and enter judgment in favor of Bazzi's on all claims.

Dated: September 30, 2019                          Respectfully submitted,


                                                   /s/ Erich C. Ferrari
                                                   Erich C. Ferrari, Esq.
                                                   FERRARI & ASSOCIATES, P.C.
                                                   1455 Pennsylvania Avenue, NW
                                                   Suite 400
                                                   Washington, D.C. 20004
                                                   Telephone: (202) 280-6370
                                                   Fax: (877) 448-4885
                                                   Email: ferrari@falawpc.com
                                                   D.C. Bar No. 978253

                                                   *Attorney for Plaintiff*
                                                   *Mohammad Ibrahim Bazzi*