**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MOHAMMAD IBRAHIM BAZZI,

               Plaintiff,

      v.

ANDREA M. GACKI, in her official
capacity as Director of the U.S. Department
of the Treasury, Office of Foreign Assets
Control, and UNITED STATES
DEPARTMENT OF THE TREASURY,
OFFICE OF FOREIGN ASSETS
CONTROL,

               Defendants.

Civil Action No. 19-cv-00484 (RM)

---

## COMBINED REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.    Bazzi Cannot Assert a Due Process Claim, and Even If He Could, Defendants Provided Him with More Notice Than was Due. .......................................................................... 2

   A.   Bazzi Cannot Establish A Connection to the United States Warranting Due Process Protection and His Argument Lacks Supporting Precedent ........................................ 2

      1.   Bazzi Fails To Provide Precedent Showing That He May Assert A Due Process Claim Here ...........................................................................................................3

      2.   Bazzi Has Not Shown a Connection to the United States Warranting Due Process ..........6

   B.   Defendants Have Provided Bazzi Ample Notice, and Thus his Due Process Claim Fails on the Merits. ................................................................................................... 8

      1.   IEEPA Allows Defendants to Use Undisclosed Classified Information, and Courts Regularly Allow the Practice. ...............................................................................9

      2.   Bazzi's Complaints with the Extensive Notice Defendants Provided Do Not Establish a Due Process Violation ................................................................................12

II.   Bazzi Confirms that his APA Claim Lacks Any Statutory Foundation and is Without Precedent ........................................................................................................... 15

III.  Bazzi Cannot Show Entitlement to Relief Because Ample Evidence Supports His Designation as a SDGT and He Did Not Dispute the Basis for His Designation ................................. 16

CONCLUSION .................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
   585 F. Supp. 2d 1233 (D. Or. 2008) ....................................................................... 16

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
   686 F.3d 965 (9th Cir. 2012) ..................................................................... *passim*

*Am-Arab Anti-Discrimination Comm. v. Reno*,
   70 F.3d 1045 (9th Cir. 1995) ............................................................................ 9

*Boumediene v. Bush*,
   553 U.S. 723 (2008)........................................................................................ 5

*Carter v. Nat'l Sec. Agency*,
   962 F. Supp. 2d 130 (D.D.C. 2013) ................................................................. 10

*Chai v. U.S. Dep't of State*,
   466 F.3d 125 (D.C. Cir. 2006).......................................................................... 18

*\*32 Cty. Sovereignty Comm. v. U.S. Dep't of State*,
   292 F.3d 797 (D.C. Cir. 2002) .................................................................. 5, 7, 8

*\*Fares v. Smith*,
   249 F. Supp. 3d 115 (D.D.C. 2017) ............................................................. *passim*

*Fares v. Smith*,
   901 F.3d 315 (D.C. Cir. 2018) ........................................................ 10, 11, 12, 14

*FBME Bank Ltd. v. Lew*,
   125 F. Supp. 3d 109 (D.D.C. 2015) .............................................................. 9, 12

*FBME Bank Ltd. v. Lew*,
   209 F. Supp. 3d 299 (D.D.C. 2016)................................................................. 10

*Hernandez v. United States*,
   757 F.3d 249 (5th Cir. 2014) ........................................................................... 4

*Hernandez v. United States*,
   785 F.3d 117 (5th Cir. 2015), *vacated & remanded sub nom. Hernandez v. Mesa*, 137 S. Ct.
   2003 (2017).................................................................................................... 4

*Hill v. U.S. Parole Comm'n*,
   No. CV 16-1476 (JEB), 2017 WL 2414446 (D.D.C. June 2, 2017)........................ 16

*\*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F.3d 156 (D.C. Cir. 2003) ................................................................ 9, 10, 11

*Howmet Corp. v. EPA*,
   614 F.3d 544 (D.C. Cir. 2010) ........................................................................ 16

*Howmet Corp. v. EPA*,
   656 F. Supp. 2d 167 (D.D.C. 2009) ............................................................... 16

*In re Anthem, Inc. Data Breach Litig.*,
   236 F. Supp. 3d 150 (D.D.C. 2017) ................................................................. 9

*Islamic Am. Relief Agency v. Gonzales*,
   477 F.3d 728 (D.C. Cir. 2007) ...................................................................... 17

*\*Jifry v. FAA*,
   370 F.3d 1174 (D.C. Cir. 2004) ............................................... 3, 4, 10, 18

*Jo v. Dist. Of Columbia*,
   582 F. Supp. 2d 51 (D.D.C. 2008) .............................................................. 6, 17

*Joumaa v. Mnuchin*,
   No. CV 17-2780 (TJK), 2019 WL 1559453 (D.D.C. Apr. 10, 2019) ................ 14, 17

*Kadi v. Geithner*,
   42 F. Supp. 3d 1 (D.D.C. 2012) ............................................................. 3, 5, 15

*Kiareldeen v. Ashcroft*,
   273 F.3d 542 (3d Cir. 2001) ......................................................................... 13

*KindHearts for Charitable Humanitarian Dev. Inc. v. Geithner*,
   647 F. Supp. 2d 857 (N.D. Ohio 2009) ...................................................... 14, 15

*Kiyemba v. Obama*,
   555 F.3d 1022 (D.C. Cir. 2009), *vacated*, 559 U.S. 131 (2010), *reinstated in relevant part*, 605 F.3d 1046 (D.C. Cir. 2010) ............................................................. 5, 6

*Martinez-Aguero v. Gonzalez*,
   459 F.3d 618 (5th Cir. 2006) ......................................................................... 7

*Morrissey v. Bowser*,
   408 U.S. 471 (1972) ..................................................................................... 14

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State ("Nat'l Council")*,
   251 F.3d 192 (D.C. Cir. 2001) ............................................................... *passim*

*People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI I")*,
   182 F.3d 17 (D.C. Cir. 1999) ..................................................................... 4, 8

*People's Mojahedin Org. of Iran v. Dep't of State ("PMOI II")*,
   327 F.3d 1238 (D.C. Cir. 2003) ............................................................. *passim*

*People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI III")*,
  613 F.3d 220 (D.C. Cir. 2010) ........................................................................ 11, 18

*Qassim v. Trump*,
  927 F.3d 522 (D.C. Cir. 2019) ............................................................................ 5, 6

*Rasul v. Myers*,
  563 F.3d 527 (D.C. Cir. 2009) ............................................................................... 5

*Suleman v. Mnuchin*,
  No. CV 16-1822 (TJK), 2019 WL 77428 (D.D.C. Jan. 2, 2019) ........................... 16

*Turkmen v. Ashcroft*,
  No. 02-CV-2307 (JG), 2006 WL 1517743 (E.D.N.Y. May 30, 2006) ................... 10

*United States v. Davis*,
  905 F.2d 245 (9th Cir. 1990) ................................................................................. 4

*United States v. Fantin*,
  130 F. Supp. 2d 385 (W.D.N.Y. 2000) .................................................................. 7

*United States v. Tehrani*,
  826 F. Supp. 789 (D. Vt. 1993) ............................................................................. 7

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) ........................................................................................... 3, 4

*Willis v. Nat'l Sec. Agency*,
  No. 17-cv-2038 (KBJ), 2019 WL 1924249 (D.D.C. Apr. 30, 2019) ..................... 10

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ............................................................................................... 4

*\*Zevallos v. Obama*,
  10 F. Supp. 3d 111 (D.D.C. 2014) ......................................................... 8, 12, 13, 15

*Zevallos v. Obama*,
  793 F.3d 106 (D.C. Cir. 2015) ........................................................................... 8, 17

## Executive Materials

Exec. Order No. 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001) ..................................... 1

Exec. Order No. 13886, 84 Fed. Reg. 48041 (Sept. 9, 2019) ....................................... 1

## Statutes

5 U.S.C. § 555(e) ......................................................................................................... 16

*50 U.S.C. § 1702(c) .................................................................................................................. 9

**Regulations**

31 C.F.R. § 501.807 .................................................................................................................. 8

## INTRODUCTION

The Office of Foreign Assets Control ("OFAC") designated Plaintiff Mohammad Ibrahim Bazzi as a Specially Designated Global Terrorist ("SDGT") pursuant to Executive Order 13224 after finding that he was a key Hizballah financier who provided the terrorist organization millions of dollars over many years.  Rather than challenging those findings, Bazzi argues that he received an inadequate explanation as to why he was designated in violation of the Fifth Amendment's Due Process clause and the Administrative Procedure Act ("APA").[1]

But Bazzi cannot assert a Due Process claim because he fails to identify any property or presence in this country that would allow him to assert such a right, and his brief fails to cite a single case showing otherwise.  *See* Pl.'s Mem. of P. & A. at 10-14, ECF Nos. 11-1, 12 ("Br.").  He also cites no authority showing that the APA requires anything beyond the unclassified or otherwise not protected portions of the administrative record that he already has.  *See id.* at 22-24.  The Court should therefore reject his claims out of hand.

In any event, his claims fare no better on the merits.  Bazzi's arguments stem from the agency's use of classified information that—for obvious reasons—it did not provide him.  But the D.C. Circuit and the International Emergency Economic Powers Act ("IEEPA") allow the reliance on such information.  And notwithstanding the use of that classified information, Defendants provided Bazzi with adequate notice, including a press release that identified the basis for his designation and supporting facts, such as Bazzi providing a terrorist group with millions of dollars generated from his business activities, countries where he operates, and his associates who were also designated for their Hizballah connections.  OFAC also published the basis for Bazzi's designation in the Federal Register.  And when providing Bazzi the administrative record underlying his

---

[1] Although not at issue here, on September 9, 2019, the President signed Executive Order 13886, "Modernizing Sanctions To Combat Terrorism," which amended Executive Order 13224.

designation, the agency provided—even though there was no obligation to do so—an unclassified summary of classified information.  That summary provided Bazzi additional supporting details, including identifying a country he utilized to transfer funds to Hizballah; a relationship that he facilitated between a Hizballah member and a narcotics trafficker; specific companies he operated with a Hizballah member; and timeframes.

Such disclosures provided Bazzi ample opportunity to respond and contest facts supporting his designation.  Tellingly, he declined to do so, effectively conceding the truth of OFAC's findings, and his attacks on the agency's extensive notice have no merit.  The Court should enter judgment for Defendants and deny Bazzi's motion for summary judgment.

## ARGUMENT

### I. Bazzi Cannot Assert a Due Process Claim, and Even If He Could, Defendants Provided Him with More Notice Than was Due.

Bazzi maintains that he has received only "conclusory allegations" supporting his designation in violation of the right to adequate post-deprivation notice under the Due Process clause.  Br. at 1-2, 10-22.  He requests that the Court "direct[] Defendants either to disclose the redacted portions of the administrative record or to provide alternative means by which Bazzi can understand the factual bases for his designation."  Br. at 10.  But Bazzi lacks sufficient connections to the United States to assert a Due Process violation, and in any event, his claim fails on the merits.

### A. Bazzi Cannot Establish A Connection to the United States Warranting Due Process Protection, and His Argument Lacks Supporting Precedent.

Defendants already explained how Bazzi, a foreign national who effectively concedes that he has no property in the United States, *see* Br. at 13, cannot assert Due Process rights here.  *See* Defs.' Mem. of P. & A. at 11-12, ECF No. 10-1 ("Defs.' Opening Br.").  In response, Bazzi fails to cite a single case showing that he may do so.  Instead, he asserts that the application of Due

Process rights is "case-specific," arguing that Defendants' "misplaced reliance" on the precedent that forecloses his claim and that this Court should instead look to litigation regarding habeas petitions for Guantanamo Bay detainees.  Br. at 10-12.  And in any event, he maintains that he has "substantial connections" to the United States such that he can claim Due Process rights.  *Id.* at 12-13.  Both points are mistaken.

### 1.   Bazzi Fails To Provide Precedent Showing That He May Assert A Due Process Claim Here.

"The Supreme Court has long held that non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections," *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) (collecting cases), and consistent with that precedent, the D.C. Circuit has declined to extend the Due Process Clause to foreign terrorist organizations ("FTO") "without property or presence" in the sovereign territory of the United States, *see, e.g.*, *People's Mojahedin Org. of Iran v. Dep't of State ("PMOI II")*, 327 F.3d 1238, 1240–41 (D.C. Cir. 2003).  These FTO cases "provide guidance" here, *see Kadi v. Geithner*, 42 F. Supp. 3d 1, 25, 28 (D.D.C. 2012), and Bazzi's Due Process claim fails under this precedent because he resides in Lebanon, *see* Am. Compl. ¶ 9, ECF No. 9, and he effectively concedes that he lacks any property in the U.S., *see* Br. at 13.

Without any case law establishing that he has Due Process rights, Bazzi tries to discredit the precedent that forecloses his claim.  He argues that *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), did not establish a "bright-line rule" for who merits Fifth Amendment rights, and instead "identified certain exceptions" under which aliens may claim constitutional protections. Br. at 10-11.  But Bazzi's argument is internally inconsistent—the application of "exceptions" assumes that a rule otherwise would apply.  And the FTO precedent applying *Verdugo-Urquidez* reveals the relevant rule: "[a] foreign entity without property or presence in this country has no

constitutional rights, under the due process clause or otherwise." *People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI I"),* 182 F.3d 17, 22 (D.C. Cir. 1999); [2] *see also Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("It is well established that" the "Fifth Amendment's protections" are "unavailable to aliens outside of our geographic borders").  In any event, Bazzi cannot show that he fits within any recognized exception.  *See infra* Part I.A.2.[3]  Bazzi notes that *Jifry* did not decide whether Due Process applied because the court was satisfied with the provided process, Br. at 11 (citing 370 F.3d at 1182-83), but such an assumption casts no doubt on the D.C. Circuit's reading of Supreme Court precedent, which the court "has applied . . . in a series of cases concerning the designation of" FTOs, *Jifry,* 370 F.3d at 1183 (internal quotation marks and brackets omitted).[4]

---

[2] Quoting *Verdugo-Urquidez, PMOI I* went on to explain that "[a]liens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country." 182 F.3d at 22 (quoting 494 U.S. at 271).  Subsequently, *Nat'l Council of Resistance of Iran v. U.S. Dep't of State,* read the word "only" in *Verdugo-Urquidez* to "limit[] the application of prior precedent," and that the case did not establish whether individuals with connections to the U.S. but not "substantial" ones are entitled to constitutional protections.  251 F.3d 192, 202 (D.C. Cir. 2001).  Regardless, Bazzi cannot show any connection here warranting the Due Process protection he seeks.  *See infra* Part I.A.2.

[3] Bazzi cites *Hernandez v. United States,* 757 F.3d 249, 268 (5th Cir. 2014), but fails to acknowledge that the judgment was subsequently vacated.  *See Hernandez v. United States,* 785 F.3d 117, 120 (5th Cir. 2015) (en banc), *vacated & remanded sub nom. Hernandez v. Mesa,* 137 S. Ct. 2003 (2017).  In any event, that case bears no resemblance to the one here, as the panel there initially found the Fifth Amendment to apply extraterritorially to an "undefined area on the Mexican side of the U.S.-Mexico border" that the majority determined was "analogous to the United States Naval Station at Guantanamo Bay, Cuba." *Hernandez,* 757 F.3d at 281 (DeMoss, J., concurring in part and dissenting in part).  And Bazzi's citation to *United States v. Davis,* 905 F.2d 245, 251 (9th Cir. 1990), undermines his point because it shows that Courts do not limit *Verdugo-Urquidez* to its facts, *see* 905 F.2d at 251 (finding no Fourth Amendment violation in search of ship because "the analysis and language adopted by the [Supreme] Court creates no exception for searches of nonresident aliens on the high seas").

[4] Bazzi quotes the observation in *Jifry* that the case "concerns alien pilots only."  Br. at 11 (quoting *Jifry,* 370 F.3d at 1177).  To the extent that he thinks that shows the case cannot apply here, he is mistaken.  Bazzi omitted the rest of the sentence which makes clear that the Court was simply describing the plaintiffs, as it went on to explain that "citizens and resident alien pilots" brought a separate lawsuit.  370 F.3d at 1177.

Moreover, whatever the quantum of connections required for due process protections to apply, Bazzi can hardly deny that the D.C. Circuit singularly requires as a preliminary step that an entity have *some* connection or presence, *e.g.*, *32 Cty. Sovereignty Comm. v. U.S. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002); *accord Nat'l Council of Resistance of Iran v. U.S. Dep't of State ("Nat'l Council")*, 251 F.3d 192, 202 (D.C. Cir. 2001) (finding "substantial connections"), and Bazzi can claim neither, *see infra* Part I.A.2.   *Cf. Kadi*, 42 F. Supp. 3d at 28 (assuming constitutional protection where case involved "arguably a factual dispute" over whether plaintiff had "sufficient connection").

Unable to meaningfully distinguish this relevant precedent, Bazzi turns to litigation surrounding habeas corpus petitions from detainees at Guantanamo Bay.  Br. at 11-12.  But those cases involve the obviously different scenario concerning law-of-war detention of alien enemy combatants during ongoing hostilities—they in no way speak to whether foreign nationals who do not reside or have property in the United States can assert Due Process challenges in challenging economic sanction programs.  *Boumediene v. Bush* held only that "Art. I, § 9, cl. 2 of the Constitution"—which prohibits Congress from suspending the writ of habeas corpus—"has full effect at Guantanamo Bay" in the specific context of law-of-war detainees who had been detained there for an extended period.  553 U.S. 723, 771 (2008).  The case turned on the unique role of the Suspension Clause in the separation of powers, *see e.g.*, *id.* at 725, 746, and the Court admonished that its decision "[did] not address the content of the law that governs" the detainees' detention, *id.* at 798; *Rasul v. Myers*, 563 F.3d 527, 529 (D.C. Cir. 2009) (per curiam) (recognizing circumscribed reach of holding).  Likewise inapposite, *Qassim v. Trump*, 927 F.3d 522 (D.C. Cir. 2019), held that *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009), did not constitute binding

Circuit precedent as to "whether Guantanamo detainees enjoy procedural due process protections under the Fifth Amendment . . . in adjudicating their habeas petitions," *Qassim*, 927 F.3d at 528.[5] The Court declined to decide (or even opine on) the merits of the petitioner's procedural due process claim, instead remanding to the district court "to consider in the first instance whether and how the Due Process Clause" applied. *Id.* at 524-25, 528, 532. Bazzi is therefore wrong to suggest that these cases disturb the well-settled precedent that show Bazzi cannot assert a Due process claim here.

### 2. Bazzi Has Not Shown a Connection to the United States Warranting Due Process.

Bazzi nevertheless maintains that he can show "substantial connections" with this country such that he can assert "a colorable claim to constitutional due process" under *Verduro-Urquidez*. Br. at 13. In support, he cites "consequences" of the Hizballah Financial Sanctions Regulations ("HFSR") and his purported past travel to the United States, Br. at 12-13, but he cannot rely on either because no such allegations appear in his amended complaint, *e.g.*, *Jo v. Dist. Of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008) ("It is well-established in this district that a plaintiff cannot amend his Complaint in an opposition to a defendant's motion for summary judgment."). In any event, these two purported bases—neither of which is supported with case law—fail to show that Bazzi can assert his constitutional claim.

By his own admission, HFSR yields an "extraterritorial consequence" that purportedly impacts his "personal and business financial accounts in various countries." Br. at 12-13. But he nowhere alleges any U.S. property is impacted, and the D.C. Circuit requires "property or presence

---

[5] *Kiyemba* recognized that "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States," and accordingly held that clause could not support the district court's order that the government release seventeen Guantanamo detainees into the United States. *See Kiyemba v. Obama*, 555 F.3d 1022, 1026-27 (D.C. Cir. 2009), *vacated*, 559 U.S. 131 (per curiam), *reinstated in relevant part*, 605 F.3d 1046 (D.C. Cir. 2010) (per curiam).

*in this country*," *32 Cty.*, 292 F.3d at 799 (emphasis added).  Bazzi cannot create an exception by arguing that the consequences of his actions have created a "dire" financial situation for him.  *See Nat'l Council*, 251 F.3d at 196 (describing impact of FTO designation, including "[p]erhaps most importantly," forbidding persons within or subject to U.S. jurisdiction from "'knowingly providing material support or resources,' to the" FTO).

Bazzi's purported "voluntar[y] travel[]" to the United States, Br. at 13, likewise provides him no Fifth Amendment protection here.  He does not even describe the date or purpose of the supposed visit, let alone any plausibly pled factual assertion that would tie this purported visit to the instant dispute.  Such absence only underscores his lack of connection to this country.  *See United States v. Fantin*, 130 F. Supp. 2d 385, 391 (W.D.N.Y. 2000) (past travel to the United States failed to satisfy substantial connections "standard set by *Verdugo-Urquidez*" because otherwise "every foreign visitor to the United States could conceivably invoke Fourth Amendment protections against searches in his own country").  And Bazzi's cited cases, Br. at 13, stand for nothing more than the unremarkable proposition that a plaintiff may challenge allegedly unconstitutional conduct that occurred while an individual is in the country.  *See Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 623, 625 (5th Cir. 2006) (alleged incident occurred "within the territorial jurisdiction of the U.S." when plaintiff had "regular and lawful entry . . . pursuant to a valid border-crossing card and h[ad] acquiesce[ed] in the U.S. system of immigration"); *United States v. Tehrani*, 826 F. Supp. 789, 793 n.1, 794-97 (D. Vt. 1993) (criminal defendants could raise constitutional defenses to their arrests that occurred in the United States); *cf. 32 Cty.*, 292 F.3d at

799 (holding no process needed for organization without property interest or current presence in country).[6]

Because Bazzi lacks a connection to the United States triggering Fifth Amendment protections, his Due Process claim fails.

## B. Defendants Have Provided Bazzi Ample Notice, and Thus his Due Process Claim Fails on the Merits.

Defendants previously explained how they satisfied any constitutional requirement because they provided Bazzi a basis to understand his designation and an opportunity offer rebuttal evidence and arguments.  Defs.' Opening Br. at 13 (citing *Zevallos v. Obama*, 10 F. Supp. 3d 111, 131 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015)).  Bazzi claims that such a basis must be accompanied by an "opportunity to make a meaningful response," Br. at 14-15, but that is precisely what he had here.  The agency issued a press release on the day of his designation disclosing facts underlying his designation, published the basis for his designation in the Federal Register, and provided him the administrative record underlying his designation, including an unclassified summary of classified information.  Defs.' Opening Br. at 5-10, 12-16.  With this information, Bazzi has a clear path under OFAC's regulations to "seek administrative reconsideration" of his designation or to assert that the circumstances no longer apply.  *See* 31 C.F.R. § 501.807.

Rather than pursuing that opportunity, Bazzi questions the Government's ability to rely upon undisclosed classified information, and asserts that even if such reliance is appropriate, he

---

[6] Bazzi claims that *32 County*, 292 F.3d at 799, held that "'presence in this country' is sufficient for the due process clause," Br. at 13, but that court echoed *Peoples Mojahedin*, which held that an entity without either has no due process rights.  It never opined as whether presence alone would suffice.  *See PMOI I*, 182 F.3d at 22.  And in *National Council*, where the D.C. Circuit found a constitutional right, the entity had both an "overt presence within the National Press Building," as well as property, *i.e.*, "an interest in a small bank account."  251 F.3d at 201.

has not been provided "with sufficient reasons as to the basis of his designation." Br. at 10.  He is

mistaken.

**1. IEEPA Allows Defendants to Use Undisclosed Classified Information, and Courts Regularly Allow the Practice.**

Bazzi claims that the Government's reliance on undisclosed classified information is

"presumptively unconstitutional," and reserved for "the most extraordinary circumstances."  Br.

at 17 (citation omitted).  But IEEPA specifically contemplates *ex parte* and *in camera* use of

classified information, *see* 50 U.S.C. § 1702(c), and the agency "need not disclose the classified

information to be presented in camera and ex parte to the court" under the Due Process clause,

*Nat'l Council*, 251 F.3d at 208-09; *see also Holy Land Found. for Relief & Dev. v. Ashcroft*, 333

F.3d 156, 164 (D.C. Cir. 2003) (stating that "'due process require[s] the disclosure of only the

unclassified portions of the administrative record'") (quoting *PMOI II*, 327 F.3d at 1242)).

"[A]mple precedent" allows agencies to "use certain sensitive information, without disclosing it,

in proceedings imposing targeted financial measures on persons and organizations."  *FBME Bank

Ltd. v. Lew*, 125 F. Supp. 3d 109, 118–19 (D.D.C. 2015) (collecting cases); *see also* Defs.' Opening

Br. at 15-16 (providing examples).  The inapposite Ninth Circuit case that Bazzi relies upon—

which involved use of classified information in summary proceedings to exclude long-time

resident aliens—provides no reason for this Court to depart from the normal course here.  *See Al

Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 981 (9th Cir. 2012)

(describing *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1052-54 (9th Cir.

1995)).[7]

---

[7] Defendants already satisfied any "burden," Br. at 17, to not disclose classified information to
Bazzi, as the record confirms that they provided him "a true, correct, and complete copy of the
non-privileged documents that were directly or indirectly considered . . . ."  Certification of A.R.
¶ 4, ECF No. 8-1.  To the extent Bazzi thinks that more is required, *see* Br. at 17 & nn.1-2, he is
mistaken.  He cites inapposite cases involving privilege disputes in civil discovery, *see In re*

Similarly, Bazzi claims that the D.C. Circuit allows the use of undisclosed, classified information only if there is no alternative means of disclosure, Br. at 17-18, and that the Government must use another procedural safeguard in such situations—"sufficiently specific 'unclassified summaries' that provide the 'who,' 'what,' 'when,' and 'where' of the allegations," Br. at 18-19 (quoting *Fares v. Smith*, 901 F.3d 315, 319, 324 (D.C. Cir. 2018)).  But Bazzi provides no case holding that there must be no alternative means of disclosure to use classified information,[8] and the D.C. Circuit has not imposed the "procedural safeguard" that he describes.  To the contrary, the D.C. Circuit in *Jifry*, for example, held that the Government satisfied the notice requirements of due process by informing foreign national pilots that their airmen certificates had been revoked based on TSA's determination that they were a "security threat," even though the notice of that revocation "did not include the factual basis for" that determination, "which was based on classified information," and plaintiffs argued that "without knowledge of the specific evidence on which TSA relied, they [were] unable to defend against the charge that they are security risks." 370 F.3d at 1178, 1184 (noting that D.C. Circuit "rejected the same argument" that an agency is not permitted to rely on undisclosed classified information with respect to the designations of

---

*Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150 (D.D.C. 2017), *Turkmen v. Ashcroft*, No. 02-CV-2307 (JG), 2006 WL 1517743, at *3 (E.D.N.Y. May 30, 2006), or a Freedom of Information Act claim, *see Willis v. Nat'l Sec. Agency*, No. 17-cv-2038 (KBJ), 2019 WL 1924249 (D.D.C. Apr. 30, 2019), *Carter v. Nat'l Sec. Agency*, 962 F. Supp. 2d 130, 140 (D.D.C. 2013).  But this action is reviewed on the administrative record, where separate rules apply. *See, e.g.*, L. Cv. R .7(h)(2), (n); *FBME Bank Ltd. V. Lew*, 209 F. Supp. 3d 299, 317 (D.D.C. 2016) ("it is far from the norm to require agencies to produce privilege logs when they exclude material from an administrative record"); *Fares v. Smith*, 249 F. Supp. 3d 115, 129 n.3 (D.D.C. 2017).

[8] Bazzi's string cite to support this assertion undermines his claim.  *See Nat'l Council*, 251 F.3d at 208 (notice "need not disclose the classified information to be presented *in camera* and *ex parte* to the court under the statute"); *PMOI II*, 327 F.3d at 1242 (rejecting argument that opportunity to challenge was not meaningful, explaining that "due process required the disclosure of only the unclassified portions of the administrative record"); *Holy Land*, 333 F.3d at 164 (similar).

FTOs in *Nat'l Council*, 251 F.3d at 208 and *PMOI II*, 327 F.3d at 1242-43).   And in *Holy Land*,

the D.C. Circuit held that due process permitted the government, pursuant to IEEPA, to rely on

classified information submitted *ex parte* and *in camera* to support the designation of a domestic

entity as a SDGT, finding the argument "that due process prevents its designation based upon

classified information to which it has not had access is of no avail."  333 F.3d at 164.[9]

Bazzi tries to root his requested "procedural safeguard" in *Fares v. Smith*, 901 F.3d 315

(D.C. Cir. 2018), but that case imposes no such requirement.  That court *permitted* the reliance on

summaries of protected information to support a designation, but did not squarely hold that such

summaries are *required*.  *Fares*, 901 F.3d at 324-25 (acknowledging out-of-circuit precedent

"countenancing the use of summaries" of classified information, without holding that due process

requires the provision of such summaries).  *Fares* had no occasion to mandate such a requirement,

as the plaintiffs "present[ed] a single claim on a single theory" that OFAC could not rely upon

undisclosed information in the administrative record at all, a claim that the D.C. Circuit easily

rejected.  *Id.* at 323, 325-26.  Further, Bazzi is wrong that any notice must take a prescribed form,

---

[9] Bazzi points (again) to an out-of-circuit decision that distinguished *Holy Land*, Br. at 15 (citing *Al Haramain Islamic Found., Inc. v. U.S. Dept. of Treasury*, 686 F.3d 965, 987 (9th Cir. 2012)). In doing so, the Ninth Circuit stated that it "appear[ed]" that the plaintiffs in *Holy Land* did not raise the issue of whether due process requires a statement of reasons and the notice sufficiently stated the reasons for the investigation. *Al Haramain*, 686 F.3d at 988.  But *Holy Land* does not say as much, and *Al Haramain* acknowledged that *Holy Land* (and *National Council*) "may suggest that a statement of reasons is not required by due process," before explaining that it was bound to follow a prior case's holding even if the D.C. Circuit cases were in conflict.  686 F.3d at 988.

Also, Bazzi muses that a classified record "essential to upholding the action" may present Due Process concerns.  Br. at 16 (citing *People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI III")*, 613 F.3d 220, 231 (D.C. Cir. 2010) (per curiam).  But Bazzi has been provided ample unclassified information that adequately supports his designation independent of any classified information, *see infra* Part III, and in any event, binding D.C. Circuit precedent has rejected due process challenges where administrative decisions relied on classified material, *see PMOI III*, 613 F.3d at 231-32 & n.2 (Henderson, J., concurring).

as Due Process "requires only that process which is due *under the circumstances of the case*."

*PMOI II*, 327 F.3d at 1242 (emphasis added); *see also*, *e.g.*, *Al Haramain*, 686 F.3d at 983

(acknowledging that an unclassified summary may not always be possible).  In short, while "courts

have recognized that unclassified summaries of classified information on which an agency relied

may be helpful to litigants, they are not required."  *FBME Bank*, 125 F. Supp. 3d at 119 n.2.

## 2. Bazzi's Complaints with the Extensive Notice Defendants Provided Do Not Establish a Due Process Violation.

Even though the agency provided Bazzi the basis for his designation and supporting facts,

Bazzi insists that he has not been provided with sufficient reasons for his designation.  But due

process requires only that OFAC provide Bazzi with "a basis from which to understand his

designation, and thereby offer rebuttal arguments and evidence in response," *Zevallos*, 10 F. Supp.

3d at 131; *see also Fares v. Smith*, 249 F. Supp. 3d 115, 127 (D.D.C. 2017), *aff'd*, 901 F.3d 315

(D.C. Cir. 2018).  Defendants easily met that standard.

To briefly summarize: (1) on the day of his designation, the agency's press release

announced the basis for Bazzi's designation, *see* A.R. at 4 ("assisting in, sponsoring, or providing

financial, material, or technological support for, or financial or other services to or in support of,

Hizballah"); and provided supporting facts, including by expanding on his illicit activities

underlying that basis, *id.* ("key Hizballah financier" who provided the terrorist group "financial

assistance for many years"); quantifying that support, *id.* ("millions of dollars"); disclosing the

source of the support, *id.* ("his business activities"); and identifying associates, *id.* at 5 (Hizballah

financiers Adham Tabaja and Ali Youssef Charara).  OFAC also (2) published the basis for Bazzi's

designation in the Federal Register.  A.R. 16.  And (3) on top of that, OFAC provided Bazzi further

detail via an unclassified summary of otherwise classified information in his evidentiary

memorandum, including by expanding on his work with associates, A.R. at 1 (facilitating the

relationship between Sharara and a designated narcotics trafficker); providing a location for illicit activities, *id.* (The Gambia), identifying specific joint businesses he operated with a Hizballah member, *id.* (Spectrum Investment Group S.A.L. Holding and Euro Africa Group), and providing timeframes for some of his activities, *id.* ("As of 2017").

Notwithstanding all of the above, Bazzi complains that the Government did not adequately identify the "activities themselves," an amount or source of his support for Hizballah, or other "specifics" regarding his ties with his associates that underlie his designation. Br. at 19-20. Aside from the fact Defendants *did disclose* those sorts of details, *see supra*, nothing beyond Defendants' disclosures was needed to provide Bazzi a basis from which to understand his designation, *see Zevallos*, 10 F. Supp. 3d at 131. Indeed, his argument conflicts with the well-recognized principle that the Government may "supply privileged information in *summary form*," *Fares*, 249 F. Supp. 3d at 128 (emphasis added), and it is hardly surprising when "summaries [are] not highly fact-specific[ to] ensur[e] that neither . . . sources nor national security [are] compromised," *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)).

The disclosures provide Bazzi more than sufficient opportunity to challenge his designation beyond simply "blanket denials." Br. at 20-21. For example, he could try to show that he does not funnel money to the terrorist organization from his businesses; that he does not have "direct ties" to Hizballah financiers Ali Youssef Charara and Adham Husayn Tabaja; or that he did not, as of early 2017, facilitate a relationship between Hizballah member Ali Sharara and designated narcotics trafficker Ali Kharroubi. A.R. 1. And though he claims to not know "which businesses and/or business lines" he could audit, Br. at 21-22, he could start with the two that OFAC specifically identified that he operated with a Hizballah member, or any other dealings he may

13

have in The Gambia, the country OFAC identified him utilizing to transfer funds to Hizballah. A.R. 1.

Bazzi's notice was not therefore "too conclusory." *Joumaa v. Mnuchin*, No. CV 17-2780 (TJK), 2019 WL 1559453, at *10 (D.D.C. Apr. 10, 2019) (rejecting similar argument); *Fares*, 249 F. Supp. 3d at 127-28 (rejecting argument that plaintiffs needed "more specific information regarding the transaction that OFAC believes were used to facilitate money laundering"). Bazzi tries to distance *Joumaa*, *see* Br. at 22, but like in that case, the notice here provided details "about [Bazzi's] alleged [illicit] activities," including "amounts of money," the "type" of support, "time frames, and locations," and his "associations with other" blocked persons. *Joumaa*, 2019 WL 1559453, at *10. While Bazzi notes that case involved a three-page letter denying his petition for delisting, *see* Br. at 22, that simply highlights steps he failed to take here, *see Joumaa*, 2019 WL 1559453, at *3 (explaining that plaintiff's petition for delisting "led to a lengthy dialogue with OFAC" and he "submitted information about his relationships with 55 individuals and 95 entities on the SDN list," and "extensive documentation").[10]

And despite his repeated references, this case bears no resemblance to the out-of-circuit decisions in *KindHearts for Charitable Humanitarian Development Inc. v. Geithner*, 647 F. Supp.

---

[10] Bazzi also references the length of the unclassified summaries in *Fares*, Br. at 15, 21, but the fact that OFAC could provide more information there—which involved multiple plaintiffs—in no way casts doubt on the constitutionality of the notice here. *See Morrissey v. Bowser*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *see also* Certification of A.R. ¶ 4 (certifying that Bazzi received "a true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered . . . ."). Moreover, *Fares* involved a designation under the Foreign Narcotics Kingpin Designation Act that relied on law enforcement sensitive information, *Fares*, 901 F.3d at 320, as opposed to classified information at issue here, the disclosure of which would harm the national security of the United States, *see id.* at 324 ("Forcing the executive branch to disclose information that it has validly classified would compel a breach in the security which that branch is charged to protect.") (quotations and citations omitted).

2d 857 (N.D. Ohio 2009), and *Al Haramain*.  As an initial matter, those cases—unlike this one—involved domestic entities, and thus due process protections that do not apply here.  *See Al Haramain*, 686 F.3d at 979; *KindHearts*, 647 F. Supp. 2d at 864.  In any event, *KindHearts* concluded that the summaries there "provided no explanation of the specific charges [OFAC] was considering against KindHearts or why it thought the evidence supported a potential designation,", and left the petitioner "largely uninformed about the basis for the government's actions," *KindHearts*, 647 F. Supp. 2d at 868, 904; *Zevallos*, 10 F. Supp. 3d at 130-31; *see also Kadi*, 42 F. Supp. 3d at 29 n.16 (distinguishing *KindHearts*, noting that the notice there included listing designation criteria and "numerous delays, failures to respond, and misplacing of plaintiff's submissions without any further explanation").  Similarly, *Al Haramain* involved a "significantly untimely and incomplete notice" that provided "only one of three reasons for [the agency's] investigation and designation."  686 F.3d at 986.  Bazzi is thus "unlike the plaintiffs in *Al Haramain and KindHearts*, who were left in the dark as to the reasons for their designations." *Fares*, 249 F. Supp. 3d at 127.

In sum, even if Bazzi could assert a Due Process claim (and he cannot), that claim fails on the merits.

## II.      Bazzi Confirms that his APA Claim Lacks Any Statutory Foundation and is Without Precedent.

Bazzi also tries to assert his Due Process claim under the APA, arguing that he "is challenging the adequacy of notice under the broader due process requirements imposed on OFAC under the APA."  Br. at 24.  According to Bazzi, "traditional concepts of due process are incorporated into administrative law," and "OFAC's lack of procedural safeguards and regulations for the designation process under the APA" mean that "the requirements of due process apply." Br. at 22-23.

15

But Bazzi has no Due Process rights, *see supra* Part I.A.1, and the APA does not independently confer constitutional rights to individuals who otherwise lack such protection. Rather, it allows those with constitutional rights to argue that an action is unlawful by alleging that those rights were violated by an agency's action. Bazzi's cited cases indicate as much. *See, e.g.*, *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 585 F. Supp. 2d 1233, 1243, 1253-54 (D. Or. 2008) (domestic entity); *Howmet Corp. v. EPA.*, 656 F. Supp. 2d 167, 169 (D.D.C. 2009) (same), *aff'd sub nom. Howmet Corp. v. EPA.*, 614 F.3d 544 (D.C. Cir. 2010); *Hill v. U.S. Parole Comm'n*, No. CV 16-1476 (JEB), 2017 WL 2414446, at *1 (D.D.C. June 2, 2017) (prisoner seeking parole from U.S. Parole Commission). Bazzi fails to cite a single case where the APA conferred constitutional rights to a litigant to otherwise lacks such rights.

Unable to show an entitlement to anything beyond the administrative record, *see* Defs.' Opening Br. at 16-17, Bazzi cannot establish that the notice he received violates the APA. Whatever level of notice might be required by the APA was plainly satisfied here in light of (i) the May 17, 2018 press release, (ii) the April 19, 2019 Federal Register notice, and (iii) the administrative record, including (iv) the unclassified summary of classified information in the evidentiary memorandum. *See supra* Part I.B. The adequacy of this notice is underscored by Bazzi's attempt to distinguish *Suleman v. Mnuchin*, which he notes involved 5 U.S.C. § 555(e) because the designee there, unlike him, submitted a delisting petition. Br. at 24. This only confirms Bazzi cannot avail himself of that "notice provision" in the APA, *Suleman v. Mnuchin*, No. CV 16-1822 (TJK), 2019 WL 77428, at *7 (D.D.C. Jan. 2, 2019), and his argument lacks any other statutory provision entitling him to anything beyond what he has already received.

Bazzi's APA claim fails.

### III.   Bazzi Cannot Show Entitlement to Relief Because Ample Evidence Supports His Designation as a SDGT and He Did Not Dispute the Basis for His Designation.

16

Because ample evidence supports Bazzi's designation, and Bazzi did not dispute the fact

that he is a key Hizballah financier, Defendants previously explained that even if there were some

error with the notice that he received (and there is not), any such error would be harmless.  *See*

Defs.' Opening Br. at 17-18 (citing *Al Haramain*, 686 F.3d at 990).  Bazzi makes three points in

response, but none allow him to escape this conclusion.

First, Bazzi claims that he "does not . . . concede" that he is a key Hizballah financier.  Br.

at 25.  But he failed to include anything in his amended complaint supporting that assertion, and

he cannot introduce new allegations here.  *See, e.g.*, *Jo*, 582 F. Supp. 2d at 64.  Second, and in

some tension with his first point, Bazzi argues that *Al Haramain* is inapposite because plaintiffs

there challenged their designation, whereas he does not.  Br. at 25.  But that counsels in favor of

applying the harmless error rule because in declining to challenge his designation here, Bazzi

effectively admits his ties to Hizballah.  "OFAC has provided ample opportunity" for him to

"present rebuttal evidence and to thereby supplement the administrative record," *Fares*, 249 F.

Supp. 3d at 125, and though he has failed to do so, he "remains free now to continue contesting

his designation by filing new delisting requests, meaning that he can make any new arguments that

occur to him." *Joumaa*, 2019 WL 1559453, at *11 n.15 (quoting *Zevallos v. Obama,* 793 F.3d

106, 117 (D.C. Cir. 2015)).

And last, Bazzi asserts that Defendants "concede[d]" the inadequacy of notice because

"they acknowledge that they are critically relying on undisclosed classified material."  Br. at 25-

26 (citations omitted).  Not so.  Defendants plainly stated that the "*unclassified administrative

record makes clear*" that ample evidence supports his designation.  Defs.' Opening Br. at 17

(emphasis added); *cf. Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007)

("We acknowledge that the unclassified record evidence is not overwhelming, but we reiterate that

our review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential."). That alone provides the Court with enough to reject Bazzi's Due Process claim. *See People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI III")*, 613 F.3d 220, 230-31 (D.C. Cir. 2010) (per curiam) (determining that providing FTO unclassified portions of record satisfies due process); *Chai v. U.S. Dep't of State*, 466 F.3d 125, 129 (D.C. Cir. 2006) (declining to resolve due process claim because "we can uphold the designations based solely upon the unclassified portion of the administrative record"). The fact that "the Court's *ex parte*, *in camera* review of the classified record will confirm" that ample evidence supports Bazzi's designation, Defs.' Opening Br. at 17, is hardly surprising, and in no way a concession of constitutional error. And in any event, the D.C. Circuit has rejected due process challenges where administrative decisions relied on classified material, *see PMOI III*, 613 F.3d at 231-32 & n.2 (Henderson, J., concurring), including when the Government relied *exclusively* on such information as the factual basis for its decision, *see Jifry*, 370 F.3d at 1184.

No error occurred here, but even if the Court concluded otherwise, it would be harmless and therefore insufficient to warrant the relief Bazzi seeks.

## CONCLUSION

The Court should enter judgment for Defendants and deny Bazzi's motion for summary judgment.

18

Dated October 21, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

*/s/ Kevin Snell*
KEVIN SNELL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-0924
Fax: (202) 616-8460
Email:  Kevin.Snell@usdoj.gov