**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
MOHAMMAD IBRAHIM BAZZI                              )
                                                    )
                        Plaintiff,                  )
                                                    )   Civil Action No. 1:19-cv-00484 (RDM)
            v.                                      )
                                                    )
ANDREA M. GACKI, *et al.*                           )
                                                    )
                        Defendants.                 )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPLETE OR, IN THE ALTERNATIVE, TO SUPPLEMENT THE
ADMINISTRATIVE RECORD**

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................1

    I.      Statement of Facts.................................................................................................1

          A.     Bazzi's Designation by OFAC.................................................................1

          B.     Bazzi's Request for Terms of Removal ...................................................2

          C.     Bazzi's Re-Designation by OFAC...........................................................5

          D.     Bazzi's Second Amended Complaint. ......................................................6

ARGUMENT .....................................................................................................................7

    II.     Completing or Supplementing the Administrative Record Is Proper Where an
          Agency Failed to Include Documents that It Considered in the Administrative
          Record or Excluded from the Record Relevant Information in Its Possession at the
          Time of Its Decision..............................................................................................7

    III.    OFAC Failed to Include Documents in the Administrative Record that It had
          Considered When It Re-Designated Bazzi Under E.O. 13224. ............................ 12

    IV.    OFAC Excluded Relevant Information in Its Possession from the Administrative
          Record When It Re-Designated Bazzi Under E.O. 13224................................... 15

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Ad Hoc Metals Coalition v. Whitman*,
    227 F. Supp. 2d 134 (D.D.C. 2002) ...................................................................8

*AMFAC Resorts, L.L.C. v. U.S. Dep't of the Interior*
    143 F. Supp. 2d 7 (D.D.C. 2001) ....................................................8, 9, 13, 14

*Bar MK Ranches v. Yuetter*,
    994 F. 2d 735 (10th Cir. 1993) .................................................................7, 10

*Califano v. Sanders*
    430 U.S. 99 (1977) ........................................................................................ 8

*Charleston Area Med. Ctr. v. Burwell*,
    216 F.Supp.3d 18 (D.D.C. 2016) .....................................................................9

*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971) ............................................................................8, 10, 14

*Common Sense Salmon Recovery v. Evans*,
    217 F. Supp. 3d 17 (D.D.C. 2002) ................................................................ 13

*CTS Corp. v. EPA*,
    759 F.3d 52 (D.C. Cir. 2014) ...........................................................................8

*Dopico v. Goldschmidt*,
    687 F.2d 644 (2d Cir. 1982) .......................................................................... 10

*Fund for Animals v. Williams*,
    391 F. Supp. 2d 191 (D.D.C. 2005) .....................................................9, 11, 15

*Fund v. Vilsack*,
    110 F. Supp. 3d 157 (D.D.C. 2015) ............................................................... 11

*Holy Land Found. for Relief and Dev. v. Ashcroft*,
    219 F. Supp. 2d 57 (D.D.C. 2002) ................................................................ 13

*James Madison Ltd. v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) ........................................................................... 13

*Marcum v. Salazar*,
    751 F. Supp. 2d 74 (D.D.C. 2010) .................................................... 10, 11, 14

*Maritel, Inc. v. Collins*,
    422 F. Supp. 2d 188 (D.D.C. 2006) .........................................................8, 9, 15

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...........................................................................................7, 8

*Nation v. Zinke*,
    302 F. Supp. 3d 352 (D.D.C. 2018) ...................................................................7

*Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*,
    516 F.2d 1229 (D.C. Cir. 1975) .........................................................................9

*Nat'l Mining Ass'n v. Jackson*,
    856 F. Supp. 2d 150 (D.D.C. 2012) .................................................... 11, 13, 14

*Nat'l Wilderness Institute v. U.S. Army Corps of Eng'rs*,
    2002 WL 34724414 (D.D.C. Oct. 9, 2002) ......................................................8

*New York v. U.S. Dep't of Commerce*,
    351 F. Supp. 3d 502 (S.D.N.Y. 2019)...............................................................9

*NRDC v. Train*,
    519 F.2d 287 (D.C. Cir. 1975) ....................................................................... 10

*Oceana, Inc. v. Ross*,
    290 F.Supp.3d 73 (D.D.C. 2018) ................................................................8, 10

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
    448 F. Supp. 2d 1 (D.D.C. 2006) ..............................................................*passim*

*Portland Audubon Soc'y. v. Endangered Species*,
    984 F.2d 1534 (9th Cir. 1993) ....................................................................... 10

*Public Citizen v. Heckler*,
    653 F. Supp. 1229 (D.D.C. 1987) ............................................................ 11, 15

*San Luis Obispo Mothers for Peace v. N.R.C*,
 751 F.2d 1287 (D.C. Cir. 1984) ...................................................................... 11

*Sara Lee Corp. v. American Bakers Ass'n*,
 252 F.R.D. 31 (D.D.C. 2008) ........................................................................... 10

*Stainback v. Sec. of Navy*,
 520 F. Supp. 3d 181 (D.D.C. 2007) .................................................................. 9

*Walter O. Boswell Memorial Hosp. v. Heckler*,
 749 F.2d 788 (D.C. Cir. 1984) .......................................................................... 9

*WildEarth Guardians v. Salazar*,
 670 F. Supp. 2d 1 (D.D.C. 2009) ..................................................................... 11

**STATUTES**

5 U.S.C. § 701 ......................................................................................................... 7

5 U.S.C. § 706 ............................................................................................... 7, 10, 14

**REGULATIONS**

31 C.F.R. § 501.807 ............................................................................................. 3, 4

**EXECUTIVE ORDERS**

Executive Order 13224 ...............................................................................*passim*

Executive Order 13886 .......................................................................................... 5

**OTHER AUTHORITIES**

84 Fed. Reg. 16567 ................................................................................................ 1

Press Release, *Treasury Targets Key Hizballah Financing Network and Iranian Conduit*,
 May 17, 2018, *available at* https://home.treasury.gov/news/press-releases/sm0388 ........ 1

# BACKGROUND

## I.    STATEMENT OF FACTS

### A.    Bazzi's Designation by OFAC

On May 17, 2018, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated Plaintiff Mohammad Ibrahim Bazzi ("Bazzi") under Executive Order ("E.O.") 13224. Bazzi's designation was based on OFAC's determination that he was "assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of HIZBALLAH, an entity whose property and interests in property are blocked pursuant to E.O. 13224." *See* Notice of OFAC Sanctions Action, U.S. Dep't of the Treasury, Office of Foreign Assets Control, 84 FED. REG. 16567 (April 19, 2019). That language reflected the designation criteria then found in E.O. 13224, Section 1(d). As a result of that designation action, Bazzi is identified on OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List") with the associated program tag "[SDGT]."[1] Further, due to his designation by OFAC, any property and interests in property subject to U.S. jurisdiction in which Bazzi maintains an interest are blocked, including entities he owns 50 percent or more, and U.S. persons are prohibited from dealing with either Bazzi or those companies.

OFAC's press release announcing the designation made a series of factual allegations about Bazzi that served as the basis for OFAC's determination that he met the criteria for designation under E.O. 13224. Press Release, *Treasury Targets Key Hizballah Financing Network and Iranian Conduit*, May 17, 2018, *available at* https://home.treasury.gov/news/press-releases/sm0388.

---

[1] SDGT is OFAC's acronym for "Specially Designated Global Terrorist."

Those allegations include:

(1) that Bazzi is a Hizballah financier who has for many years provided Hizballah with financial assistance and millions of dollars generated from his business activities;

(2) that Bazzi worked with Abdallah Safi-Al-Din, Hizballah's representative to Iran, to reestablish a political relationship between The Gambia and Iran, and that between 2009 and 2010 they worked with the Central Bank of Iran to expand banking access between Iran and Lebanon;

(3) that Bazzi worked to provide funds to alleged Hizballah financier Adham Tabaja, with whom he held a joint line of credit;

(4) that Bazzi maintains ties to Ali Charara through shared ownership in Car Escort Services S.A.L. Off Shore, an import/export company based in Lebanon;

(5) that Iran is complicit in the "despicable behavior" of Bazzi;

(6) that Bazzi is a close associate of Yahya Jammeh;

(7) that Bazzi has business ties to the Ayman Joumaa Drug Trafficking and Money Laundering Organization; and

(8) that as of 2015, Bazzi, as an owner of Global Trading Group, had drafted two securities totaling approximately $1 million to operate and maintain two power plants in Lebanon. *Id*.

### B.   *Bazzi's Request for Terms of Removal*

In response to his designation, counsel for Bazzi met with OFAC on November 29, 2018, to discuss Bazzi's case and request a "Terms of Removal" agreement under which Bazzi would take certain steps to negate the basis of his designation in exchange for his delisting. Second Am. Compl. ("SAC"), ¶ 38, ECF No. 23. This meeting was not intended to initiate administrative

reconsideration of Bazzi's designation. Rather, it was intended provide OFAC with information showing that the circumstances resulting in his designation had already changed, and thus seek to have Bazzi's designation rescinded under a Terms of Removal agreement setting forth remedial steps or commitments by Bazzi that would satisfy OFAC that his delisting is warranted. *See* 31 C.F.R. § 501.807(a). During the meeting, counsel for Bazzi provided OFAC with specific information rebutting all of the allegations in its press release and explaining that his relationships with persons OFAC alleged him to have engaged in sanctionable behavior with had ceased. SAC ¶ 39, ECF No. 23.

On December 18, 2018, counsel for Bazzi sent a formal letter to the Section Chief for Counterterrorism in OFAC's Office of Global Targeting ("OGT"), who attended the November 29, 2018 meeting. That letter memorialized the information that was provided to OFAC with respect to (1) Bazzi's understanding of the factual allegations that OFAC has made concerning his designation; (2) the facts that demonstrate a change in circumstances concerning those allegations; (3) Bazzi's cooperation and meeting history with U.S. law enforcement; and (4) Bazzi's request for a Terms of Removal agreement. Exhibit A—Letter titled "November 29, 2018 Meeting Follow Up" from Erich C. Ferrari to OFAC (Dec. 18, 2018). The letter itemized in point-by-point detail the countervailing information that had been discussed with respect to the allegations made against Bazzi in OFAC's press release. For example, the letter explained that while Bazzi is not, as OFAC suggests, a "Hizballah financier," he did formerly have some business dealings with some of the parties that OFAC alleged he had dealt with, but that those dealings ceased long ago. *Id*. The letter also addressed the other alleged relationships and activities described in OFAC's press release and explained how OFAC has mischaracterized or misunderstood certain activities or relationships, as

well as that certain activities and relationships had ceased, and therefore Bazzi's designation should be rescinded. *Id.*

Additionally, the letter outlined a series of meetings and other communications between Bazzi and members of U.S. law enforcement and intelligence agencies. *Id.* It explained that Bazzi shared information with the U.S. Government between 2014 and 2017 that closely tracks the allegations from OFAC's press release, and that those agents with whom Bazzi had met were informed that those activities from which OFAC derives its allegations had ceased many years ago. *Id.* Accordingly, as the circumstances—the nature of which were exaggerated by OFAC—underlying Bazzi's designation had changed, and the U.S. Government was aware of those changes, the letter noted that Bazzi could not further change the circumstances relied upon for his designation as they had already previously changed. *Id.* Therefore, Bazzi formally reiterated his request to have his designation rescinded instead pursuant to a Terms of Removal agreement setting forth any additional remedial steps or commitments by Bazzi that would satisfy OFAC that his delisting is warranted. *See* 31 C.F.R. § 501.807(a).

After considering that request, on February 6, 2019, OGT's Section Chief for Counterterrorism responded to Bazzi's counsel that OFAC would not be providing a Terms of Removal agreement at that time. Exhibit B—Response to "November 29, 2018 Meeting Follow Up" Letter from OFAC to Erich C. Ferrari (Feb. 6, 2019). OFAC's response further noted that Bazzi could formally request administrative reconsideration of his designation, but did not provide any reasoning, rationale, or explanation as to why it would not provide him a Terms of Removal agreement. *Id.* The response letter from OFAC was captioned with OFAC Case ID SDGT-12664. *Id.*

C.     *Bazzi's Re-Designation by OFAC*

On February 26, 2019, Bazzi initiated this matter. Compl., ECF No. 1. During the course of this litigation, Defendants disclosed to Bazzi's counsel the administrative record compiled in support of their initial action to designate Bazzi. The disclosed record included a heavily redacted Evidentiary Memorandum, an unclassified summary of the evidence purportedly summarizing the redacted information contained in the Evidentiary Memorandum, and a copy of the press release announcing Bazzi's designation. SAC ¶ 3, ECF No. 23. The contents of that administrative record were certified by Defendants in this matter. ECF No. 8. The Evidentiary Memorandum was captioned Case ID SDGT-12664, and it was cleared though OFAC's Director as well as an Associate Director, Deputy Associate Director, Assistant Director, and OGT's Section Chief for Counterterrorism. Exhibit C—Originally Disclosed Evidentiary Memorandum and Exhibit List, Admin. R. ("AR") 0017-0029.

On September 9, 2019, while this lawsuit was in process, the legal authority under which Bazzi was designated—E.O. 13224—was amended. *See* Exec. Order No. 13886, 84 Fed. Reg. 48041 (Sept. 9, 2019). The amendments included, *inter alia*, a material change to the legal criteria for designation under E.O. 13224, including the criteria for Bazzi's designation. *Id.*

On November 20, 2019, Defendants through counsel advised Bazzi's counsel that there was an administrative error before this litigation began in processing two of the exhibits supporting the evidentiary memorandum, and that OFAC would therefore issue a new blocking memorandum and evidentiary memorandum with the two exhibits correctly processed. SAC ¶ 27, ECF No. 23.

On November 25, 2019, Defendants determined that Bazzi met one of the new legal criteria for designation under amended E.O. 13224 and re-designated Bazzi pursuant to E.O. 13224, as amended. *Id.* ¶ 28. Defendants disclosed to Bazzi's counsel a heavily redacted copy of a new

administrative record compiled in support of their re-designation of Bazzi, on December 6, 2019. *Id*. ¶ 29. The contents of the new administrative record were thereafter certified by Defendants. ECF No. 20.

The new administrative record alleges that "BAZZI has materially assisted, sponsored, or provided financial, material, or technological support for; or goods or services to or in support of, HIZBALLAH, a person whose property and interests in property are blocked pursuant to E.O. 13224, as amended, and therefore he should remain on the list of Specially Designated Nationals and Blocked Persons." Re-Designation Admin. R. ("RAR") 0017. The new re-designation administrative record includes a substantively similar new Evidentiary Memorandum, RAR 0016-0026, but the same unclassified summary, RAR 0001, and the same press release. RAR 0002-0010. The new Evidentiary Memorandum identifies a new Case ID, SDGT-17144, and was cleared though OFAC's Director, Associate Director, Deputy Associate Director, and Assistant Director, but now omits OGT's Section Chief for Counterterrorism and wholly redacts the names and titles of any other officials involved in that clearing process. RAR 0016.

The administrative record for Bazzi's re-designation makes no reference to OFAC's meeting with Bazzi's counsel, their receipt of information showing that the circumstances resulting in Bazzi's initial designation had already changed, nor the formally requested rescission of Bazzi's designation pursuant to a Terms of Removal which OFAC considered but rejected. SAC ¶ 43, ECF No. 23.

D.   *Bazzi's Second Amended Complaint*

On January 10, 2020, Bazzi filed the Second Amended Complaint in this matter. ECF No. 13. The Second Amended Complaint challenges, *inter alia*, OFAC's determination that Bazzi meets the criteria for designation under E.O. 13224, as amended, and OFAC's failure to provide

notice of its decision consistent with the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et al.*[2] *Id.*

Count I of the Second Amended Complaint alleges that Defendants' re-designation of Bazzi constitutes arbitrary and capricious agency action as Defendants have not accounted for, assessed, or reasoned their discounting of the exculpatory and countervailing evidence in their possession, and rely on evidence that is outdated, immaterial, non-probative, and historical. SAC ¶ 51-52, ECF No. 23. In addition, Count II alleges that Defendants' denial of Bazzi's request for a Terms of Removal agreement was an agency action that is arbitrary and capricious as Defendants have not provided any reasoning or explanation in support of the denial decision. *Id.* ¶ 55.

## ARGUMENT

**II.   COMPLETING OR SUPPLEMENTING THE ADMINISTRATIVE RECORD IS PROPER WHERE THE AGENCY FAILED TO INCLUDE DOCUMENTS THAT IT CONSIDERED IN THE ADMINISTRATIVE RECORD OR EXCLUDED RELEVANT INFORMATION IN ITS POSSESSION AT THE TIME OF ITS DECISION FROM THE RECORD**

The APA "directs the Court to 'review the whole record or those parts of it cited by a party.'" *Nation v. Zinke*, 302 F. Supp. 3d 352, 357 (D.D.C. 2018) (quoting 5 U.S.C. § 706). For example, in determining whether an agency action is arbitrary or capricious, the Court must evaluate the evidence and analysis before the agency, the considerations the agency weighed, and the agency's conclusions and reasoning. *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In order to do so, the Court "must have before it the 'whole

---

[2] Bazzi filed the initial Complaint in this matter on February 26, 2019, challenging, *inter alia*, OFAC's decision to designate Bazzi under E.O. 13224, as well as its failure to provide him adequate notice of the basis for that designation. Compl., ECF No. 1. Bazzi amended that Complaint on July 12, 2019 following Defendants' disclosure of the original administrative record underlying his initial designation under E.O. 13224. Am. Compl., ECF No. 9. That amended complaint was further amended on January 10, 2020 following OFAC's re-designation of Bazzi under E.O. 13224, as amended, and its disclosure of the new administrative record underlying that re-designation action. SAC, ECF No. 23.

record' on which the agency acted." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). Without having all the evidence before the agency, the Court cannot assess whether a decision "runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Assn. of U.S., Inc*, 463 U.S. at 43. Accordingly, the Court must review "the full administrative record that was before the [agency] at the time that [it] made [its] decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Courts in this Circuit have defined the complete administrative record "to include 'all documents and materials that the agency directly or indirectly considered,'" *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4-5 (D.D.C. 2006) (quoting *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006)). Although "considered" and "relied upon" are used almost interchangeably in the relevant case law, a document having been referred to, considered by, or used by an agency before taking a final agency action must be included in the administrative record, particularly given an adverse nature of its contents. *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002)

An administrative record "properly consists of the materials before the agency and no more nor less," *see Oceana, Inc. v. Ross*, 290 F.Supp.3d 73, 78 (D.D.C. 2018), which "includes all materials [the agency] directly or indirectly relied on to make all decisions, not just final decisions." *Nat'l Wilderness Institute v. U.S. Army Corps of Eng'rs,* 2002 WL 34724414 at *3 (D.D.C. Oct. 9, 2002) (citing *AMFAC Resorts, LLC v. U.S. Dep't of the Interior*, 143 F.Supp.2d 7, 10 (D.D.C. 2001)); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("It is black-letter administrative law that in an [Administrative Procedure Act] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision.") (citations omitted). "As part of the record, the Court may consider any document that might have

influenced the agency's decision and not merely those documents the agency expressly relied on in reaching its final determination." *Charleston Area Med. Ctr. v. Burwell*, 216 F.Supp.3d 18, 23 (D.D.C. 2016) (citing *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975) (quotation omitted)). To be complete, the record must include "all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." *AMFAC Resorts*, 143 F.Supp.2d at 12 (citation omitted).

By ensuring that it has "before it neither more nor less information than did the agency when it made its decision," a reviewing court is able to undertake "fair review of an agency decision." *Pac. Shores Subdivision, Cal. Water Dist.*, 448 F. Supp. 2d at 5 (quoting *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196 (D.D.C. 2005)); *see also Stainback v. Sec. of Navy*, 520 F. Supp. 3d 181, 185 (D.D.C. 2007) (noting that "[a]llowing administrative agencies to preclude judicial access to materials relied upon in taking whatever action is then being subject to judicial scrutiny would make a mockery of judicial review."). "To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case." *Walter O. Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C. Cir. 1984). The APA does not allow an agency to "skew the record in its favor by excluding pertinent but unfavorable information." *Fund for Animals*, 391 F. Supp. 2d at 197. Nor may an agency exclude pertinent information "on the grounds that it did not 'rely' on the excluded information" when making its decision. *Maritel, Inc.*, 422 F. Supp. 2d at 196 (in contrast, an agency may exclude arguably relevant information that is not contained in the agency's files but that may be available from third parties) (citations omitted). Accordingly, "where it appears that the administrative record designated by the agency is not the 'whole record' that was before the agency decisionmakers at the time of decision, a court may order that the record be completed." *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d

502, 632 (S.D.N.Y. 2019); *see, e.g.*, *Portland Audubon Soc'y. v. Endangered Species,* 984 F.2d 1534, 1548 (9th Cir. 1993); *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982); *NRDC v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975).

A "decisionmaker" is anyone who is involved in making the agency's determination. *See Sara Lee Corp. v. American Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008). Nonetheless, an agency enjoys a presumption of regularity with respect to the administrative record it prepares, as it is generally in the best position to identify and compile the record. *Pac. Shores Subdiv., Cal. Water Dist.*, 448 F.Supp.2d at 1, 5 ("[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record.") (citation omitted).

To prevail on a motion to complete the record, a plaintiff must therefore only "put forth concrete evidence and identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." *Oceana, Inc.*, 290 F.Supp.3d at 73, 78-89 (citations omitted). Thus, it does not suffice to "merely assert" that materials "were before an agency when it made its decision." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). If, however, a plaintiff "can show that a piece of evidence *was* before the agency at the time the decision was made—and thus that evidence *is* part of the administrative record—it makes little sense to require that the plaintiff also show unusual circumstances before requiring the agency to add the properly-part-of-the-record evidence to the record." *Oceana, Inc.*, 290 F. Supp. 3d at 78.

If a court finds that the record produced "clearly do[es] not constitute the 'whole record' compiled by the agency," it will order the agency to complete the record. *Citizens to Preserve Overton Park*, 401 U.S. at 419 (quoting 5 U.S.C. § 706); *see also Bar MK Ranches*, 994 F. 2d at

740 ("When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question."). Provided that the moving party presents "reasonable, non-speculative grounds" for its belief that an agency failed—whether by intent or by negligence—to include materials that were before it in the administrative record, completion of the record is appropriate. *Id*; *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (quoting *Marcum*, 751 F. Supp. 2d at 74, 78).

In addition, supplementation of the administrative record—as opposed to completing the administrative record with evidence that was before the agency at the time of its decision—may be necessary when an agency excludes information adverse to its position. *Public Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1987) (citing *San Luis Obispo Mothers for Peace v. N.R.C,* 751 F.2d 1287, 1327 (D.C. Cir. 1984)). Accordingly, an administrative record can be completed or supplemented "in one of two ways, 'either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extrajudicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record.'" *Fund v. Vilsack*, 110 F. Supp. 3d 157, 160 (D.D.C. 2015) (quoting *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009)). "A plaintiff can make a *prima facie* showing that an agency excluded adverse information from the record by proving that the documents at issue (1) were known to the agency at the time it made its decision, (2) 'are directly related to the decision,' and (3) 'are adverse to the agency's decision.'" *Fund for Animals*, 391 F. Supp. 2d at 198 (citing *Public Citizen*, 653 F. Supp. at 1237).

### III.    OFAC FAILED TO INCLUDE DOCUMENTS IN THE ADMINISTRATIVE RECORD THAT IT HAD CONSIDERED WHEN IT RE-DESIGNATED BAZZI UNDER E.O. 13224

On November 25, 2019, Defendants undertook a "final agency action" by re-designating Bazzi pursuant to E.O. 13224, as amended, for having "materially assisted, sponsored, or provided financial, material, or technological support for; or goods or services to or in support of, HIZBALLAH." Re-Designation Admin. R. ("RAR") 0017. Defendants represented that they were merely addressing an administrative error that occurred before this litigation began related to the processing of two of the exhibits supporting the evidentiary memorandum underlying the designation. SAC ¶ 27, ECF No. 23.

The re-designation administrative record disclosed to Bazzi and placed on this Court's docket is the record underlying the "final agency action" at issue in this matter. Defendants have certified to this Court that the disclosed administrative record constitutes "a true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered in connection with OFAC's decision to re-designate Plaintiff Mohammad Ibrahim Bazzi (Plaintiff)." ECF No. 20.

The record, however, does not include all documents and materials that had been considered by OFAC before it rendered this agency action. Specifically, it does not include the December 18, 2018 letter from Bazzi's counsel to OFAC providing exculpatory information with respect to each allegation from OFAC's press release announcing Bazzi's initial designation and requesting a Terms of Removal agreement in light of that information. Nor does it include OFAC's response to that letter denying Bazzi's request for a Terms of Removal agreement. This is despite the fact that OFAC considered Bazzi's request for a Terms of Removal agreement under the same Case ID as his initial designation—SDGT-12664. *Compare* Exhibit B, Exhibit C. The December 18, 2018 letter was uncontrovertibly before and considered by the agency, as evidenced by

OFAC's response, and OFAC cannot now ignore it with respect to the agency action being challenged in this instant case. Accordingly, the exclusion of these documents from the administrative record underlying Bazzi's re-designation is inappropriate.

This Court should have "before it neither more nor less information than did the agency when it made its decision." *Pac. Shores Subdivision, Cal. Water Dist.*, 448 F. Supp. 2d at 5. That is why courts in this Circuit have mandated that agencies collect all materials that were before the agency when it reached its decision. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996); *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 3d 17, 20 (D.D.C. 2002). This "include[s] 'all documents and materials that the agency directly or indirectly considered,'" *Pac. Shores Subdivision, Cal. Water Dist.*, 448 F. Supp. 2d at 4-5, as well as those documents and materials "that might have influenced the agency's decision[.]" *AMFAC Resorts*, 143 F. Supp. 2d at 12. A complete administrative record should not be limited to those documents and materials "on which the agency relied in its final decision," *Id.*, but should instead "include[] evidence contrary to the agency's position." *Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 65 (D.D.C. 2002). As is the case here, completion of the administrative record is appropriate when parties "identify reasonable, non-speculative grounds for [their] belief that the documents were considered by the agency and not included in the record." *Nat'l Mining Ass'n*, 856 F. Supp. 2d at 156.

In the instant matter, the "complete" administrative record necessarily includes the December 18, 2018 letter from Bazzi's counsel and OFAC's response as they were "before the decision-makers." *Nat'l Mining Ass'n*, 856 F. Supp. 2d at 156. Further, these documents were considered by the same decisionmakers—including the Section Chief for Counterterrorism—that made the decision to initially designate him, under the same Case ID SDGT-12664. As those

documents were properly before and in fact considered by the agency, whether Defendants relied on them in rendering their decision to re-designate Bazzi is beside the point, as "a complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." *AMFAC Resorts*, 143 F. Supp. 2d at 12. "[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." *Id*. It is more than sufficient that the documents were before OFAC and were directly or indirectly considered by the agency in reaching its decisions. *Pac. Shores Subdivision, Cal. Water Dist.*, 448 F. Supp. 2d at 4-5. Absent the December 18, 2018 letter and OFAC's response, this Court will have less information before it than OFAC did when it made its decision to re-designate Bazzi under E.O. 13224, as amended.

Yet, Defendants have excluded from the administrative record certified before this Court the letter providing exculpatory information with respect to each allegation from OFAC's press release announcing Bazzi's initial designation, despite the letter being before and considered by OFAC in denying Bazzi's request for a terms of removal agreement. Bazzi has presented "reasonable, non-speculative grounds" for the belief that OFAC failed—whether by intent or by negligence—to include materials that were before it in his administrative record, and completion of the record is therefore appropriate. *Id*; *Nat'l Mining Ass'n*, 856 F. Supp. 2d at 150, 156 (quoting *Marcum*, 751 F. Supp. 2d at 74, 78). Accordingly, the record produced by OFAC "clearly do[es] not constitute the 'whole record' compiled by the agency," and the Court should order the agency to complete the record by including both the December 18, 2018 letter from Bazzi's counsel and OFAC's February 6, 2019 response to that letter. *Citizens to Preserve Overton Park*, 401 U.S. at 419 (quoting 5 U.S.C. § 706).

## IV.   OFAC EXCLUDED RELEVANT INFORMATION IN ITS POSSESSION FROM THE ADMINISTRATIVE RECORD WHEN IT RE-DESIGNATED BAZZI UNDER E.O. 13224

If Court finds that the documents requested to complete the record in this matter were not considered by or otherwise before OFAC when it re-designated Bazzi, then Bazzi alternatively argues that Defendants inappropriately excluded relevant information from the administrative record underlying that decision. Specifically, Bazzi has made a *prima facie* showing that OFAC excluded adverse information from the record by proving that "the documents at issue (1) were known to the agency at the time it made its decision, (2) 'are directly related to the decision,' and (3) 'are adverse to the agency's decision.'" *Fund for Animals*, 391 F. Supp. 2d at 191, 198 (citing *Public Citizen*, 653 F. Supp. at 1237).

The December 18, 2018 letter from Bazzi's counsel unquestionably was known to OFAC, the agency's response to the letter—under the same Case ID SDGT-12664—shows that it is directly related to the decision. Further, the substance of the letter contained exculpatory information with respect to each allegation supporting Bazzi's initial designation—and Defendants have acknowledged that the basis for his re-designation remained "substantively identical" to Bazzi's initial designation. Defs.' Mem at 10, ECF No. 24. The exclusion of the December 18, 2018 letter from the administrative record by OFAC is therefore improper.

Agencies are barred from "skew[ing] the record in [their] favor by excluding pertinent but unfavorable information from the administrative record," nor may agencies exclude information "on the grounds that [they] did not 'rely' on the excluded information" when making their decision. *Maritel, Inc.*, 422 F. Supp. 2d at 196. Considering that the bases of OFAC's initial designation and re-designation of Bazzi are "substantively identical," Defs.' Mem at 10, ECF No. 24, the December 18, 2018 letter is relevant to OFAC's determination that Bazzi "has materially assisted, sponsored, or provided financial, material, or technological support for; or goods or services to or in support

of, HIZBALLAH, a person whose property and interests in property are blocked pursuant to E.O. 13224, as amended, and therefore he should remain on the list of Specially Designated Nationals and Blocked Persons." RAR 0017

In this case, there is clear evidence that the December 18, 2018 letter memorializing the meeting between Bazzi's counsel and OFAC, providing countervailing evidence with respect to the allegations underlying his designation, and requesting a Terms of Removal agreement was before the agency decisionmakers. By responding to that letter, OFAC demonstrated that its contents were considered, including by the same decisionmakers that designated Bazzi, under the same OFAC Case ID SDGT-12664 as the original administrative record. Accordingly, it is clear that OFAC considered the letter and chose not to include it in the new administrative record compiled in support of Bazzi's re-designation, notwithstanding the direct relevance of the exculpatory information contained in the letter to that action.

## CONCLUSION

For the foregoing reasons, the Court is respectfully requested to grant Bazzi's Motion To Complete or, in the Alternative, to Supplement the Administrative Record and require Defendants to include in the administrative record in this matter (1) the letter of December 18, 2018, from Erich C. Ferrari to OFAC titled "November 29, 2018 Meeting Follow Up;" (2) the response of February 6, 2019, to that letter from OFAC to Erich C. Ferrari; and (3) the Evidentiary Memorandum and Exhibit List that were originally disclosed and certified in this matter, AR 0017-0029.

Dated: March 20, 2020                                   Respectfully submitted,

                                                        /s/ Erich C. Ferrari, Esq.
                                                        Erich C. Ferrari, Esq.

16

Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253

Counsel for Plaintiff
*Mohammad Ibrahim Bazzi*