UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMAD IBRAHIM BAZZI,

    *Plaintiff*,

v.

ANDREA M. GACKI, *et al.*,

    *Defendants*.

No. 19-cv-484 (RDM)

## MEMORANDUM OPINION AND ORDER

    Plaintiff Mohammad Ibrahim Bazzi seeks to supplement the administrative record of the proceeding that led the Office of Foreign Assets Control ("OFAC") to designate him as a Specially Designated Global Terrorist ("SDGT") pursuant to Executive Order 13224. After OFAC initially designated him, Plaintiff wrote to the office seeking to strike a deal—he would take certain remedial actions if OFAC would agree to remove his name from the Specially Designated Nationals and Blocked Persons List. OFAC rejected that request. Later, after this litigation was underway, OFAC discovered technical errors in the original administrative record. To correct those errors, OFAC decided to re-designate Plaintiff through a new agency proceeding. Plaintiff now contends that his letter to OFAC, which included what he alleges is exculpatory information pertaining to his designation, should be part of the administrative record for his re-designation because it was before the agency at the time of the re-designation.

    Upon consideration of Plaintiff's motion to supplement the administrative record, Dkt. 28, Defendants' opposition, Dkt. 29, and Plaintiff's reply, Dkt. 30, the Court will **DENY** Plaintiff's motion.

## I. BACKGROUND

On May 17, 2018, OFAC designated Plaintiff as an SDGT, pursuant to Executive Order 13224, for "assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah." Dkt. 29 at 7; Dkt. 1-1 at 1–2 (Ex. A) (Press Release, "Treasury Targets Key Hizballah Financing Network and Iranian Conduit"). The office therefore placed Plaintiff on its Specially Designated Nationals and Blocked Persons List. Dkt. 23 at 7 (2d Amd. Compl. ¶ 23); *see also* Notice of OFAC Sanctions Action, 83 Fed. Reg. 23,997 (May 23, 2018). Plaintiff's property and interests in property subject to U.S. jurisdiction were blocked, and U.S. persons are prohibited from dealing with either Plaintiff or his companies. Dkt. 28-1 at 6.

On November 29, 2018, Plaintiff's counsel met with OFAC to request a "terms of removal agreement"—that is, "an agreement by which Bazzi would undertake certain steps to negate the basis of his designation in exchange for a delisting." Dkt. 23 at 10 (2d Amd. Compl. ¶ 38). After the meeting, Plaintiff's counsel sent a letter to OFAC, which reiterated his request for a terms of removal agreement and identified "countervailing information" challenging the allegations underlying OFAC's designation. *Id*. at 10–11 (2d Amd. Compl. ¶ 39). The letter, for instance, argued that Plaintiff's relationship with Abdallah Safi-Al Din, with whom OFAC had accused Plaintiff of associating in a press release announcing his designation, Dkt. 1-1 at 1–2 (Ex. A), had ended in 2006 or 2007. Dkt. 28-2 at 7. Plaintiff's counsel was "clear," however, that the letter did not constitute "a request for administrative reconsideration under 31 C.F.R. § 501.807," and that "neither this letter nor any of its representations should be included in any record being developed with respect to an administrative reconsideration of Bazzi's designation." *Id*. at 3. Rather, the letter was "simply" intended to memorialize the parties' conversation at the

meeting and to "facilitate further discussion with the agency about resolving this matter without litigation." *Id*. On February 6, 2019, OFAC responded by letter and denied Plaintiff's request for a terms of removal agreement. Dkt. 28-3 at 2.

Plaintiff filed this lawsuit on February 26, 2019, challenging his designation. Dkt. 1. On June 12, 2019, OFAC filed the certified index of the administrative record, with substantial redactions. Dkt. 8-1. As part of the administrative record, OFAC provided Plaintiff with an "evidentiary memorandum" from case "SDGT-12644," which set forth OFAC's reasons for designating Bazzi, again with substantial redactions. *Id.*; Dkt. 28-4. Plaintiff then filed an amended complaint, alleging that OFAC had not given him sufficient notice of the basis for his designation. Dkt. 9 at 8–9 (Amd. Compl. ¶¶ 32–36). The parties cross-moved for summary judgment. Dkt. 10; Dkt. 11.

In preparing the unredacted version of the administrative record for the Court's *ex parte*, *in camera* review, OFAC discovered "an apparent administrative error in the processing of two exhibits prior to this litigation." Dkt. 29 at 8. "Specifically, two exhibits to the evidentiary memorandum contained certain discrete pieces of information that should not have been included." *Id*. To remedy this error, OFAC re-designated Plaintiff in a new agency proceeding with a new administrative record. *See* Dkt. 18 at 2; Dkt. 19 at 1.

On November 25, 2019, OFAC re-designated Plaintiff in a new evidentiary memorandum pursuant to Executive Order 13224, which had been amended since Plaintiff's first designation. Dkt. 19 at 1; Dkt. 23 at 8 (2d Amd. Compl. ¶ 28). On December 6, 2019, OFAC filed a certified index of the new administrative record from Plaintiff's re-designation. Dkt. 20-1. The updated administrative record included a new evidentiary memorandum with a new case number, "SDGT-17144." Dkt. 28-1 at 11. The new administrative record "is very similar to the

administrative record supporting [Plaintiff's] initial designation," again with substantial redactions. Dkt. 23 at 8 (2d Amd. Compl. ¶ 30). On January 10, 2020, Plaintiff filed a second amended complaint, challenging both his re-designation and the agency's denial of his request for a terms of removal agreement. Dkt. 23.

Plaintiff now moves to complete, or, in the alternative, to supplement the administrative record pertaining to his re-designation with (1) his letter requesting a terms of removal agreement; (2) the agency's response to that letter; and (3) the evidentiary memorandum and exhibit list for case SDGT-12644. Dkt. 28; Dkt. 30. OFAC opposes the motion. Dkt. 29.

## II. ANALYSIS

Courts review agency action based on "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. This means that "review is to be based on the full administrative record that was before the [agency] at the time [of its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The administrative record includes "all materials compiled by the agency" that were "before the agency at the time the decision was made." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (internal quotations and citations omitted); *see also Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008). The Court "should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

Limiting judicial review to the record before the agency "reflects the recognition that further judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government and should normally be avoided." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) (internal quotations and citations omitted);

4

*see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). The agency's designation of the record is therefore "entitled to a strong presumption of regularity." *Am. Wild Horse Pres. Campaign v. Salazar*, 859 F. Supp. 2d 33, 41 (D.D.C. 2012) (internal quotations omitted).

In order to limit review to "only those documents that were before the agency," courts "do not allow parties to supplement the record unless they can demonstrate unusual circumstances justifying a departure from this general rule." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (internal quotations omitted). The D.C. Circuit has identified three such unusual circumstances in which supplementing the administrative record is warranted: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Id*. (quoting *Kempthorne*, 530 F.3d at 1002); *see also City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C.Cir.2010).

When deciding whether to consider materials beyond those in the administrative record certified by the agency, courts have used the word "supplement" in two different ways, which has led to "some confusion." *Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). The distinction between the types of supplementation can be important, as in this case. First, a plaintiff may file a motion to "complete" the administrative record. That is, the plaintiff may assert that the materials in question actually were before the agency at the time of its decision, but the agency failed to include them in the certified record.

5

*Id*. at 5–6.  Courts in this district have held that to overcome the presumption of regularity a plaintiff seeking to complete the administrative record must "put forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers."  *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010).  Alternatively, a plaintiff may file a motion asking the Court to consider extra-record evidence.  That is, the plaintiff may seek review of evidence separate and apart from the record that was before the agency.  Because reliance on extra-record evidence is difficult to reconcile with "the principle that judicial review of an administrative action is just that—a *review* of the *administrative action* the agency took based on what was before it at the time it acted"—courts will grant such a motion only on "rare occasions."  *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, No. 20-cv-103 (RDM), 2020 WL 5642287, at *8 (D.D.C. Sept. 22, 2020).

Here, Plaintiff principally moves for completion of the record, arguing that the letter requesting a terms of removal agreement was before the agency at the time of his re-designation. Dkt. 28-1 at 17–19.  But, in the alternative, he argues that the letter should be considered as extra-record evidence, because even if the agency did not consider the letter during the re-designation process, it should have.  *Id*. at 20–21.

With respect to completion, Plaintiff argues that the certified administrative record "does not include all documents and materials that had been considered by OFAC before it rendered" its re-designation decision because the record does not include Plaintiff's letter to OFAC requesting a terms of removal agreement.  *Id*. at 17.  The letter was relevant to the re-designation, Plaintiff asserts, because it provided OFAC with "exculpatory information with respect to each allegation from OFAC's press release announcing Bazzi's initial designation." *Id*.  Plaintiff argues that the letter was "uncontrovertibly before and considered by the agency, as

evidenced by OFAC's response, and OFAC cannot now ignore it with respect to the agency action being challenged in this instant case." *Id*. at 17–18.  Plaintiff also points out that a similar group of agency decision-makers worked on his initial designation, his terms of removal request, and his re-designation, meaning that the full record was before them.  *Id.* at 18–19.

OFAC responds that it properly excluded the letter from the administrative record because it "did not consider [the letter in] re-designating [Plaintiff]."  Dkt. 29 at 15.  OFAC argues that Plaintiff "improperly conflates discrete agency actions"—OFAC's rejection of the terms of removal offer was an entirely separate agency action from its decision to re-designate Plaintiff.  *Id*. at 17.  The Court must base its review, according to OFAC, on the record from the discrete agency action being challenged, in this case the re-designation, and may not consider materials generated even in related proceedings.  *Id*.  Relying on the presumption of regularity, OFAC asserts that Plaintiff cannot show that the agency considered a document in one agency action by pointing out that it considered that same document in a different agency action.  *Id*. at 17–18.

Plaintiff's motion to complete the record presents a close question, which requires careful attention to what Congress meant when it required courts to base their review of administrative decisions "on the *whole record* or those parts of it cited by a party," 5 U.S.C. § 706 (emphasis added), and what the Supreme Court meant when it declared that the "whole record" refers to "the full administrative record that was before the [agency] at the time [of its] decision," *Citizens to Preserve Overton Park*, 401 U.S. at 420.  Countless decisions since *Citizens to Preserve Overton Park* have reaffirmed the fundamental tenet that, "in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'"  *Hill Dermaceuticals v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O.

7

*Boswell Mem'l Hosp.*, 749 F.2d at 792); *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (discussing the administrative record in terms of the "record before the agency"); *Dist Hosp. Partners*, 786 F.3d at 55 (explaining that review is based on the "record that was before" the agency); *Kempthorne*, 530 F.3d at 1002 (same); *James Madison* Ltd., 82 F.3d at 1095 (same); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) (same); *Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 850–51 (D.C.Cir.1993) (same); *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) (same).

In applying and refining this standard, decisions from this Court have often asked whether the agency "considered" a particular document. *See*, *e.g.*, *Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014); *Wilmina Shipping AS v. United States Dep't of Homeland Sec.*, No. 11-cv-2184, 2013 WL 12340838, at *3 (D.D.C. Sept. 4, 2013). Under this view, a plaintiff seeking to complete the administrative record must "identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Pac. Shores*, 448 F.Supp. 2d at 6. Somewhat more expansively, several decisions posit that the administrative record must "include all information . . . that [the agency] directly or *indirectly* considered . . . at the time the relevant decisions were made." *Alaska Excursion Cruises, Inc. v. United States*, 603 F. Supp. 541, 550 (D.D.C. 1984) (emphasis added); *see also In re United States*, 138 S. Ct. 371, 372 (2017) (Breyer, J., dissenting from grant of stay); *Thompson v. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993); *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006); *Pac. Shores*, 448 F. Supp. 2d at 4; *Bimini Superfast Operations LLC*, 994 F. Supp. 2d at 105.

For present purposes, the Court need not wrestle with the metaphysical question of what it means to "consider" a document "indirectly" because it is well settled that an agency "may not skew the record in its favor by excluding pertinent but unfavorable information" and may not "exclude information on the grounds that it did not 'rely' on the excluded information in its final decision." *Maritel, Inc.*, 422 F. Supp. 2d at 196.  The APA "'requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case.'"  *Walter O. Boswell Mem'l Hosp.*, 749 F.2d at 792 (quoting S. Rep. 752, 79th Cong., 1st Sess. 28 (1945)).  Permitting an agency to ignore "unfavorable" evidence that was before it at the time of the decision would frustrate judicial review and would deprive the APA of much of its force.  *Id.*; *see also In re United States*, 138 S. Ct. at 372 (Breyer, J., dissenting from grant of stay) ("Effective review depends upon the administrative record containing all relevant material presented to the agency, including not only material supportive of the government's decision but also materials contrary to the government's decision.").  It is for this reason that the D.C. Circuit precedent permits supplementation of the administrative record if "the agency deliberately or negligently excluded documents that may have been adverse to its decision."  *Dist. Hosp. Partners*, 786 F.3d at 55; *Kempthorne*, 530 F.3d at 1002; *James Madison*, 82 F.3d at 1095.

Against this backdrop, Plaintiff "clarif[ies]" that his principal argument is not "that OFAC should have considered" the information set forth in his letter; rather, he maintains "that OFAC *did* consider that letter."  Dkt. 30 at 18.  In the ordinary course, that argument would carry substantial weight.  As Plaintiff notes, previous decisions from this Court have held that a plaintiff can make out a prima facie case for completing the record by showing that "the documents at issue (1) were known to the agency at the time it made its decision, (2) are directly

9

related to the decision, and (3) are adverse to the agency's decision. " *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 198 (D.D.C. 2005) (internal quotations omitted); *see also Kent County v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992) (finding a "prima facie showing" that the agency "excluded from the record evidence adverse to its position" where the agency was "negligent" in failing to find internal reports that did not support its ultimate decision); *Styrene Info. & Research Ctr., Inc. v. Sebelius*, 851 F. Supp. 2d 57, 65 (D.D.C. 2012) (observing that agency's adoption of some reports but not others "lends some credibility" to suggestion that the rejected reports were "adverse"). Applying that standard here, Plaintiff's letter seeking a terms of removal agreement and OFAC's response denying that request were squarely before OFAC when it re-designated Plaintiff: The decisionmakers responsible for re-designating Plaintiff were aware of the letter and its contents, Dkt. 29 at 12; the contents of Plaintiff's letter spoke directly to the facts underlying his designation and therefore also his "substantively identical" re-designation, Dkt. 29 at 10; and the letter was adverse to OFAC's decision to re-designate Plaintiff, because it at least arguably refuted point by point his alleged ties to terrorists and terrorist organizations, Dkt. 28-2 at 2–7.

The problem that Plaintiff faces is that he expressly requested that OFAC *omit* the letter from "any record being developed with respect to an administrative reconsideration of Bazzi's designation." *See* Dkt. 29 at 15. OFAC argues that if Plaintiff wanted the agency to "determine whether [the letter's contentions] negated the basis for his designation, he should have submitted a request for administrative reconsideration." *Id*. According to OFAC, Plaintiff "cannot deprive OFAC of the occasion to substantively respond to his letter's allegations in the agency's administrative process, and then use those allegations in this Court to attack his designation." *Id*. at 16. Plaintiff replies that OFAC "miss[es] the point entirely," because he "does not now claim

10

that the letter should have been considered as part of a reconsideration of his designation." Dkt. 30 at 5. Rather, Plaintiff asserts, what matters is that the letter was before OFAC at the time of the re-designation. *Id*.

Because OFAC makes initial designation decisions *ex parte*, the administrative reconsideration process typically represents the only mechanism for a designated person to proffer exculpatory evidence, including facts that allegedly undermine the basis for the blocking order, to the agency. *See* 31 C.FR. § 501.807; *Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015); *see also Rakhimov v. Gacki*, No. CV 19-2554 (JEB), 2020 WL 1911561, at *2 (D.D.C. Apr. 20, 2020). In seeking administrative reconsideration, the blocked person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation." 31 C.F.R. § 501.807(a). After OFAC has conducted its review of the request for reconsideration, which may (but need not) include a hearing, "[OFAC] will provide a written decision to the blocked person." *Id*. § 501.807(d). Significantly, as the D.C. Circuit has noted, a "designated person can request delisting as many times as he likes." *Zevallos*, 793 F.3d at 110.

Here, however, Plaintiff expressly requested that OFAC refrain from using his submission in that manner, Dkt. 28-2 at 3, and, as a result, the office reasonably concluded that Plaintiff was not asking that it consider the letter in making any merits determination. He was merely asking that OFAC consider the information in the context of reaching a negotiated resolution, while reserving his right to submit the letter for formal consideration if that failed. *Id*. If Plaintiff had then sought reconsideration without submitting the letter, OFAC could have decided that request without referencing the letter, as requested. The fact that in this case OFAC re-designated him, rather than reconsidering his existing designation, does not require a different result. Either way, it was up to Plaintiff to decide whether to proffer his additional information

to OFAC for consideration on the merits (as opposed to consideration as part of a negotiated resolution), and the office reasonably relied on his request not to add the information to the administrative record. Having made this choice, Plaintiff needs to accept the consequences. Moreover, if he wants OFAC to consider the letter for reasons other than a negotiated compromise, he still has the means to do so—he just needs to file a request for reconsideration, along with the letter.

The D.C. Circuit has explained that limiting supplementation of the administrative record serves both to incentivize parties to "structure their participation [in the administrative process] so that it . . . alerts the agency to the [parties'] position and contentions," *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514–15 (D.C. Cir. 2010), and to prevent parties from making "an end run around the agency's substantive . . . judgments," *CTS Corp. v. EPA*, 759 F.3d 52, 65 (D.C. Cir. 2014). It is a foundational tenet of administrative law that the agency should be given the opportunity to address a party's submission in the first instance, a principle that provides part of the basis for limiting judicial review to the administrative record. By requiring that Plaintiff request administrative reconsideration before seeking to expand the record on judicial *review* of OFAC's decision, the Court can protect the integrity of the administrative process and can ensure that the office has the opportunity to consider the information (and to issue a written decision) in the usual course.

Plaintiff's alternative argument that the Court should consider the letter as extra-record evidence, Dkt. 30 at 12, fails for much the same reason. If anything, his request that the agency not consider the letter for purposes of administrative reconsideration is even more preclusive under the standards established for the admission of extra-record evidence. A court should consult extra-record evidence only when "gross procedural deficiencies" compromise the

administrative process or frustrate judicial review. *Hill Dermaceuticals*, 709 F.3d at 47. Admitting extra-record evidence may be necessary "(1) when the agency failed to examine all relevant factors; (2) when the agency failed to explain adequately its grounds for decision; (3) when the agency acted in bad faith; or (4) when the agency engaged in improper behavior." *Styrene Info. & Research Ctr., Inc.*, 851 F. Supp. 2d at 63 (citing *IMS, P.C.*, 129 F.3d at 624). Plaintiff cannot make a colorable argument that OFAC committed a "gross procedural" error, "acted in bad faith," or "engaged in improper behavior" when it was merely following his own instructions not to consider the letter other than for purposes of a negotiated resolution. And, to the extent that Plaintiff argues in his complaint that OFAC failed adequately to explain its decision, including by providing Plaintiff with insufficient notice of the reasons for his re-designation, Dkt. 23 at 15–17 (2d Amd. Compl. ¶¶ 60–70), he does not need the letter to make out those claims, which rise and fall on the sufficiency of the existing record.

The Court thus concludes that Plaintiff's motion to supplement the administrative record with his letter and OFAC's response, regardless whether the motion is construed as seeking to complete the administrative record or to present extra-record evidence, must be denied.

\* \* \*

That leaves two other loose ends. In addition to his letter to OFAC and the office's letter in response, Plaintiff also seeks to supplement the administrative record for his re-designation with the evidentiary memorandum and exhibit list from the certified administrative record for his first designation. Dkt. 28-1 at 21. Although he lists those materials in his request for relief, Plaintiff provides no argument for why they were or should be part of the administrative record for the re-designation. The Court will therefore deny the motion with respect to those materials.

Finally, in his Second Amended Complaint, Plaintiff challenges the agency's rejection of his request for a terms of removal agreement as arbitrary and capricious, in addition to challenging his re-designation. Dkt. 23 at 14 (2d Amd. Compl. ¶¶ 54–55). OFAC has not filed a separate administrative record for that agency action and, instead, merely asserts in a footnote that Plaintiff "is not entitled to a separate administrative record underlying that decision because in challenging an action committed to the agency's [un]reviewable discretion, he fails to . . . state a claim under the APA upon which relief could be granted." Dkt. 29 at 17 n.5; *see also* Dkt. 24-1 at 30–32 (seeking summary judgment because the decision whether to enter a terms of removal agreement is committed to agency discretion). Plaintiff, for his part, has not requested a separate administrative record for his challenge to OFAC's denial of a terms of removal agreement. Because Plaintiff has not raised the issue, and because OFAC merely mentions the question in passing, the Court will reserve judgment on whether a separate administrative record is necessary with respect to Plaintiff's challenge to OFAC's refusal to enter into a terms of removal agreement.

## CONCLUSION

For these reasons, the Court hereby **DENIES** Plaintiff's motion to supplement the administrative record, Dkt. 28. It is further **ORDERED** that the parties shall confer and file a proposed briefing schedule for summary judgment motions on or before September 30, 2020.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 23, 2020